IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Cr. No. 16-3308 JB |
| ) | |
| vs. ) | |
| ) | |
| GASPAR LEAL, ) | |
| ) | |
| Defendant. ) | |

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNT 1 OF THE SUPERSEDING INDICTMENT

The United States of America responds to defendant's motion to dismiss Count 1 of the Superseding Indictment based on double jeopardy grounds. The government requests that the motion be denied.

**I. PROCEDURAL BACKGROUND**

On July 12, 2016, a federal grand jury returned a two-count indictment in the matter of *United States v. Gaspar Leal et. al*, 16-3069 JB charging Gaspar Leal ("the defendant") and other conspirators with a violation of 21 U.S.C. § 846, that being Conspiracy, and 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), that being Distribution of 50 Grams and More of a Mixture and Substance Containing Methamphetamine, and 18 U.S.C. § 2, that being Aiding and Abetting.

On August 9, 2016, a federal grand jury returned a four-count indictment (Doc. 2) in the instant matter of *United States v. Daniel Carmona et. al*, 16-3308 JB. The defendant and other conspirators were charged with a violation of 21 U.S.C. § 846, that being Conspiracy. The defendant's co-defendant, Daniel Carmona ("Carmona"), was charged alone with two violations 21

1

U.S.C. §§ 841(a)(1) and (b)(1)(B), that being Distribution of 50 Grams and More of a Mixture and Substance Containing Methamphetamine, and a violation of 18 U.S.C. § 924(c), that being Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime, and Possessing a Firearm in Furtherance of Such Crime.

On December 6, 2017, a federal jury in *United States v. Gaspar Leal et. al*, 16-3069 JB convicted the defendant at trial of a violation of 21 U.S.C. § 846, that being Conspiracy, but acquitted him of a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), that being Distribution of 50 Grams and More of a Mixture and Substance Containing Methamphetamine, and 18 U.S.C. § 2, that being Aiding and Abetting.

On December 20, 2017, a federal grand jury returned a three-count superseding indictment (Doc. 95) in the instant matter. The defendant was charged alone with a violation of 21 U.S.C. § 846, that being Conspiracy, and two violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), that being Distribution of 50 Grams and More of Methamphetamine, and 18 U.S.C. § 2, that being Aiding and Abetting.

## II. FACTS

A.  Evidence in Support of the First Conspiracy

The following evidence is in support of the conspiracy upon which the jury convicted defendant Leal on December 6, 2017, in *United States v. Gaspar Leal et. al*, 16-3069 JB.

In May of 2016, Confidential Informant 2478 (hereinafter referred to as "the CI") initiated phone contact with the defendant.    The defendant, the CI and other conspirators began discussing the sale of methamphetamine, heroin, Suboxone, a stolen car, and firearms.

On May 5, 2016, the CI called the defendant, who at that time was working as a barber, to schedule an appointment for a haircut.

On May 7, 2016, the defendant called the CI to talk about the haircut appointment. The defendant suggested that the CI go to his (the defendant's) apartment for the haircut.    During this call, the defendant gave the CI directions to his apartment.    The CI visited the defendant's apartment as instructed.    Once at the defendant's apartment, the CI observed a high-volume of foot-traffic which the CI believed was consistent with drug trafficking activity.    The CI further observed that the defendant was in possession of crack, cocaine, heroin and methamphetamine.

On May 10, 2016, the defendant made arrangements for the CI to buy methamphetamine from a drug supplier known only as "Pete." "Pete" called the CI and made arrangements to meet to conduct a drug deal. The CI in fact purchased 3.2 net/actual grams of methamphetamine from "Pete" that day, May 10, 2016.

On May 12, 2016, the CI purchased directly from the defendant .2565 net/actual grams of methamphetamine and .780 net grams of heroin.

On June 8, 2016, while in jail, the defendant arranged a drug deal in which the CI and an ATF undercover agent purchased 55.74 net grams (51.83 actual grams) of methamphetamine from Candace Tapia and Bernadette Aurora Tapia. This drug transaction formed the basis of the charged conduct set forth in the indictment filed in the matter of *United States v. Gaspar Leal et. al*, 16-3069 JB.    The defendant was convicted by a jury of conspiracy in connection to this indictment (16-3069 JB) on December 6, 2016.

B. <u>The Evidence in Support of the Second Conspiracy</u>

On July 21, 2016, defendant made contact with a CI, the same one who participated in the earlier conspiracy. Leal was incarcerated at the Central New Mexico Correctional Facility. This phone call was from within the prison facility and was recorded. Defendant told the CI to contact "Jose," (Jose Casillas) and provided phone number (505) 203-8238. The CI placed a recorded phone call to Casillas. Casillas understood that the CI was interested in purchasing methamphetamine. Casillas stated that he was going to contact a female individual via Facebook and obtain prices for the methamphetamine and that he would then contact the CI. Casillas further stated that he could introduce the CI to the female individual in person, so that he would not have to continue acting as a "middle man."

On July 22, 2016, the CI was contacted via text message from phone number (505) 319-7381, identified as being associated with Erika Barraza. On July 24, 2016, at approximately 7:27 pm, the CI placed a recorded phone call to Barraza at phone number (505) 319-7381. The CI asked Barraza if she was the individual who the CI had been in text message communication with. Barraza acknowledged that it was her and stated she had been instructed by her boyfriend Arreola-Palma who in prison with Leal to contact the CI.

On that day, the CI received an incoming phone call from Casillas. Casillas already had a three-way phone call in progress with Leal. Leal stated he had been having trouble establishing contact with the CI, due to him calling from within the prison facility, and then shortly thereafter placed Arreola-Palma on the phone with the CI. Arreola-Palma advised the CI to contact one of his cousins and make him aware that Arreola-Palma had advised the CI to contact him. Arreola-Palma explained that his cousin, Daniel Carmona, did not speak English

4

and that Carmona would be able to provide the CI with an ounce of methamphetamine for $300.00 at the initial transaction and $400.00 for all other future transactions.   The CI acknowledged and stated that those were far better prices than what the CI had been previously able to purchase methamphetamine for and further stated that he would be able to financially compensate Arreola-Palma for his role as a broker in the transaction.   Arreola-Palma acknowledged and further explained that he was assisting in brokering the deal as a favor to Leal. The CI advised Arreola-Palma that he would contact Carmona and attempt to arrange a meeting for the following day, to which Arreola-Palma acknowledged in the affirmative.   Leal then returned to the phone conversation and provided the CI with (505) 504-5813 as a contact number for Carmona.   Casillas then attempted to place a three way phone call to Carmona, however he was unsuccessful in establishing contact.   Arreola-Palma then told the CI just to establish contact via text message and the CI agreed.   Leal then asked the CI to provide him with some money in prison and provided his inmate number "69999."   Arreola-Palma then provided the address for CNMCF and Casillas recorded all of the information.

That day, the CI had a telephone conversation with Carmona and asked if Carmona was able to provide methamphetamine for purchase.   Carmona stated that he could and asked the CI when he was seeking to conduct a transaction.   The CI stated that he would be able to conduct the methamphetamine transaction on the following day around midday.   Carmona stated he would be able to meet the CI sometime after midday, after he left work for the day.   The CI acknowledged.

On this same date, the CI and Carmona engaged in a series of text message communications wherein Carmona notified the CI that the price per ounce of methamphetamine

5

would be $550.00.    The CI and Carmona also agreed to meet in the parking lot of the Walmart near San Mateo and Central in Albuquerque.

On July 25, 2016, at approximately 5:50 pm, an undercover agent and the CI arrived at the Walmart parking lot located at 301 San Mateo Blvd SE, Albuquerque, New Mexico.    The undercover agent parked the undercover vehicle and awaited the arrival of Carmona.

On this same date, at approximately 6:26 pm, the CI received a phone call from Carmona. Carmona stated that he had arrived and asked the CI what type the vehicle he was in.    The CI then gave to Carmona a physical description of the undercover vehicle.    Carmona stated that he would park behind the undercover vehicle so the CI could enter his vehicle.

At approximately 6:27 pm, the undercover agent observed a Honda coupe, red in color, bearing New Mexico license plate NCG 547 pull into the parking space behind the undercover vehicle.    The undercover agent and the CI exited the undercover vehicle and entered Carmona's vehicle.    The CI asked the undercover agent if he had the money and the undercover agent then paid Carmona for the methamphetamine.    Carmona gave to the undercover agent 57.4 net grams (53.9 actual grams) of methamphetamine.

On August 3, 2016, Carmona again sold methamphetamine to the undercover agent and the CI.    Carmona sold 55.9 net grams (55.3 actual grams) of methamphetamine to the undercover agent and the CI.

## IV. ARGUMENT

The Fifth Amendment to the United States Constitution provides, in pertinent part, that "nor shall any person be subject to the same offense to be twice put in jeopardy of life or limb." It prevents a person from being prosecuted for a crime of which he has once been acquitted.

The defendant argues that he cannot be tried on the conspiracy charge as brought in the Superseding Indictment (Doc. 95) because it is the same conspiracy upon which a jury convicted the defendant previously in *United States v. Gaspar Leal et. al*, 16-3069 JB.

The rationale for barring a retrial after an acquittal has been explained as follows: "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety, and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."  *United States v. Wood*, 958 F.2d 963, 971 (10th Cir.1992) (quoting *Green v. United States*, 355 U.S. 184, 187-88 (1957)). *See also Burks v. United States*, 437 U.S. 1, 11 (1978) ("The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.").

In this case, the defendant was convicted not acquitted and his Fifth Amendment claim is unripe as he knows not what evidence the government will or will not produce at the second trial. The grand jury charged the defendant with separate conspiracies in separate indictments.   Until the governments presents some evidence, the defendant has no complaint about being convicted of the same offense twice.   Moreover, the two conspiracies are not the same; they are separate crimes.

    A. <u>Defendant's Claim is Unripe</u>

A claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated or indeed may not occur at all." *United States v. Bennett*, 823 F.3d 1316, 1326 (10th Cir. 2016)(quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).    The Tenth

Circuit has held: "Our prudential ripeness doctrine requires us to balance" (1) "the fitness of the issue for judicial review" and (2) "the hardship to the parties from withholding review."  *Id*.

As for "whether the issue is fit for judicial review, the courts focus on whether determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed."  *Id*.  As for the "hardship to the parties," we "consider whether the parties face a direct and immediate dilemma" if review is denied.  *Id*. at 1326–27 (internal quotation marks and citation omitted).

In this case, defendant's claim that he is subject to being placed in jeopardy twice is contingent upon future events, specifically, the trial on the second indictment.  The potential claim is not one of law but rather contingent upon facts that have not been sufficiently developed.  The defendant knows not what evidence the government will introduce at trial.  His claim is based on mere speculation.  His arguments could be raised in a motion pursuant to Federal Rule of Criminal Procedure 29.

> B. <u>There Defendant Will not Be Subject to Jeopardy Twice Because the Conspiracies Charged Against the Defendant in the Indictments Are Different Agreements Between Different People With an Different Object in View.</u>

A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other.  The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense.  The lead case on double jeopardy, as cited by the defendant, is *Blockburger v. United States*, 284 U.S. 299 (1932), which held that "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory

8

provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id*. at 304.

In *Braverman v. United States*, 317 U.S. 49 (1942), a multiple punishment case, the Court was faced with a single indictment charging seven separate conspiracy offenses as a result of a moonshining operation. The defendants were convicted and received consecutive sentences for the individual conspiracies. On appeal, the Court emphasized the agreement being the gravamen of the conspiracy offense, and on the government's concession that the proof at trial showed a single agreement, the Court held that the defendants could not receive consecutive sentences on the seven charged conspiracies. 317 U.S. at 54.

The Tenth Circuit in *United States v. Gabriel Rodriquez-Aguirre*, 73 F.3d 1023 (10th Cir. 1996), considered Double Jeopardy challenges to successive continuing criminal enterprise and conspiracy counts. On the continuing criminal enterprise charge, the Court concluded that it was not "completed" at the time of the defendant's prior Kansas conspiracy charge, and that the date range of the CCE charge was after the Kansas conspiracy charge. The Court conducted a *Blockburger* type analysis and also noted that the defendant had committed several CCE predicate offenses after his Kansas indictment. Therefore, the CCE offense was not "completed" until after the Kansas conspiracy offense had concluded. Accordingly, the Court denied the Double Jeopardy challenge to the successive CCE charge.

According to the *Blockburger* test, if each offense for which the defendant is tried or punished contains a separate element not present in the other, double jeopardy does not bar the successive prosecution. *Blockburger v. United States*, 284 U.S. at 304. The *Blockburger* test only applies in two scenarios: (1) when the government charges two offenses simultaneously

9

which arise from the same conduct and may have the same elements, *see United States v. Morehead*, 959 F.2d 1489, 1506-07 (10th Cir.1992); or (2) when, after a judgment of acquittal, the government charges a new offense which arguably has the same elements as the offense on which the defendant was acquitted, *United States v. Farr*, 591 F.3d 1322, 1326 (10th Cir. 2010); *see United States v. Genser*, 710 F.2d 1426, 1427 (10th Cir.1983)

In a double jeopardy analysis involving conspiracies, the Court must determine whether the two transactions were interdependent and whether the Defendants were "united in a common unlawful goal or purpose." *United States v. Sasser*, 974 F.2d 1544, 1550 (10th Cir.1992) (quoting *United States v. Daily*, 921 F.2d 994, 1007 (10th Cir.1990)).

As set forth in Section II of this response, the conspiracies charged in each indictment are separate. There are no overlapping overt acts in support of both conspiracies. With the exception of Leal and the CI, there are no overlapping conspirators. Indeed, Leal is not even in the same place as he was where he set up the first drug transaction. He has moved from the jail to prison and has a new roommate, Arreola-Palma, with whom a new conspiracy was born. The dates of the conspiracies do not overlap. There's no evidence that Leal even knew Arreola-Palma when he was setting up the drug transactions with the Tapia sisters.

As there is no overlapping evidence between the two conspiracies, the defendant's right to not be tried twice for the same crime is not violated.

C. <u>The Government Intends to Introduce Some Evidence of Leal's Prior Drug Transactions Only for an Appropriate Purpose Established by Federal Rule of Evidence 404(b)</u>.

The government has described the other acts evidence that it plans to introduce at trial and its argument in a prior pleading. Therefore, the arguments are not restated here. The

government acknowledges that the evidence cannot be considered as proof of guilt and that the jury must consider the evidence only as it shows motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b).   Further the evidence must be specifically described and delineated in a jury instruction so that there can be no confusion between direct evidence and Rule 404(b) evidence.

### III. CONCLUSION

WHEREFORE, the United States respectfully requests that the Court deny defendant's motion to do dismiss Count 1 of the Superseding Indictment.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*Electronically Filed*
SAMUEL A. HURTADO
NORMAN CAIRNS
Assistant U.S. Attorneys
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274

I HEREBY CERTIFY that a copy of the foregoing motion was delivered to defense counsel of record, Jason Bowles, this 20th day of March 2018.

*Electronically Filed*
SAMUEL A. HURTADO
NORMAN CAIRNS
Assistant U.S. Attorneys