1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4                    Plaintiff,

5        vs.              NO:  16-CR-3308 JB

6    GASPAR LEAL

7                    Defendant.

8

9                    VOLUME 1

10        Transcript of Trial Proceedings before The

11   Honorable James O. Browning, United States District

12   Judge, Albuquerque, Bernalillo County, New Mexico,

13   commencing on July 22, 2019.

14   For the Plaintiff:  Samuel Hurtado
                         Norman Cairns
15
     For the Defendant:  Jason Bowles
16

17

18

19

20

21

22
             Jennifer Bean, FAPR, RDR, CRR, RMR, CCR
23              Certified Realtime Reporter
                United States Court Reporter
24                   NM CCR #94
                  333 Lomas, Northwest
25              Albuquerque, New Mexico 87102

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

                          I N D E X

EXAMINATION OF MICHAEL RAMOS

       By Mr. Hurtado                          14

       By Mr. Bowles                           33

       By Mr. Hurtado                          49

       By Mr. Bowles                           58

       By Mr. Hurtado                          64

EXAMINATION OF CONFIDENTIAL INFORMANT

       By Mr. Hurtado                          67

       By Mr. Bowles                          103

       By Mr. Hurtado                          122

REPORTER'S CERTIFICATE                        154

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           THE COURT:  All right.  Everyone be seated.

2    All right.  Mr. Hurtado, do you have an opening

3    statement on behalf of the Government?

4           MR. HURTADO:  Yes, sir, Your Honor.  May it

5    please the Court.

6           THE COURT:  Does anyone wish to invoke the

7    rule?  Mr. Bowles?

8           MR. BOWLES:  Your Honor, I would invoke the

9    rule, but I don't think there are any other witnesses

10   in the courtroom.

11          THE COURT:  All right.  Do you wish to have

12   it invoked or you want to --

13          MR. BOWLES:  I would invoke the rule.

14          THE COURT:  All right.  It's a rule of law

15   that witnesses may be excluded from the courtroom so

16   that they cannot hear the testimony of other

17   witnesses.  This rule does not apply to parties or

18   expert witnesses.  The rule of exclusion has been

19   invoked in this case and all witnesses to whom the

20   rule applies will be required to remain outside of

21   the courtroom until they are called to testify.

22          Witnesses excluded from the courtroom

23   should not discuss with other witnesses their

24   testimony before they or the other witnesses testify,

25   but they may discuss their testimony with the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  lawyers.

2          All right, Mr. Hurtado, if you have an

3  opening statement on behalf of the United States.

4          MR. HURTADO:  Yes, sir.  May it please the

5  Court.

6          THE COURT:  Mr. Hurtado.

7          MR. HURTADO:  Counsel for the defense,

8  ladies and gentlemen of the jury, good afternoon.

9  Please allow me to reintroduce myself.  My name is

10 Samuel Hurtado, and I represent the United States

11 Attorney's Office.  With me today is my colleague

12 Mr. Norm Cairns.  Joining us at the prosecution table

13 is Mr. Mike Ramos.  He is an ATF agent and the lead

14 investigator in this case.

15          This is a case in which all of the evidence

16 to be presented will point squarely in the direction

17 of one man, the defendant, Mr. Gaspar Leal.  As you

18 now know, the defendant is charged with conspiracy

19 and distributing methamphetamine.

20          The background to this case began in May of

21 2016.  In May of 2016, the ATF initiated a criminal

22 investigation of the defendant.  The ATF decided to

23 use one of its long-time confidential informants to

24 help in the ATF's investigation of the defendant.

25          A confidential informant is a person who

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    supplies information to the police about criminal

2    activity.  In this case, the ATF decided to use a

3    confidential informant in an undercover capacity to

4    investigate the defendant in this case.  In May of

5    2016, the ATF learned that the defendant was

6    self-employed as a barber.  So what the ATF decided

7    to do was instruct the confidential informant to

8    place a phone call to the defendant for the purpose

9    of scheduling an appointment for a haircut.

10          The confidential informant did as he was

11   instructed by the ATF.  The confidential informant

12   called the defendant and scheduled an appointment for

13   a haircut.  A couple of days later, defendant called

14   the confidential informant and invited the

15   confidential informant to his apartment for the

16   haircut appointment.  There at the defendant's

17   apartment, the confidential informant for the first

18   time met with the defendant in person in a

19   face-to-face capacity.

20          A couple of months later, in July of 2016,

21   the defendant ended up in jail.  On July 21, 2016,

22   the defendant, from jail, made a phone call to the

23   confidential informant in an attempt to set up a drug

24   deal with the confidential informant.  During that

25   phone call, the defendant suggested to the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    confidential informant that he, the confidential

2    informant, should reach out to this drug dealer that

3    the defendant knew.

4            A few days later, on July 4, 2016, and

5    again from jail, this time accompanied by another

6    inmate at the jail, the defendant placed a phone call

7    to the confidential informant, again with the purpose

8    of setting up a drug deal with the confidential

9    informant.  This time the defendant suggested another

10   drug dealer for the confidential informant to call.

11   The defendant suggested that the confidential

12   informant call a drug dealer named Daniel Carmona.

13   The defendant gave drug dealer Daniel Carmona's phone

14   number to the confidential informant and instructed

15   the confidential informant to call drug dealer

16   Carmona for the purpose of buying methamphetamine.

17           The confidential informant did as he was

18   instructed.  The confidential informant on July 25,

19   2016, placed a phone call to drug dealer Daniel

20   Carmona.  Daniel Carmona agreed to sell 2 ounces of

21   methamphetamine to the confidential informant.  The

22   confidential informant and Daniel Carmona agreed to

23   meet later that same day, July 25, 2016.

24           So the confidential informant, with the

25   authorization of the ATF, went out to meet with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1 Daniel Carmona. The confidential informant was

2 accompanied by an ATF undercover agent, and together

3 the confidential informant and the ATF undercover

4 agent purchased 2 ounces of methamphetamine from

5 Daniel Carmona.

6 Several days later, on August 3, 2016, the

7 confidential informant again called Daniel Carmona

8 with the intention of buying 2 ounces

9 methamphetamine. Daniel Carmona again agreed to sell

10 2 ounces to the confidential informant. Once again

11 the confidential informant, again accompanied by the

12 ATF undercover agent, met with Daniel Carmona. Once

13 Daniel Carmona produced to the undercover agent 2

14 ounces of methamphetamine, the ATF converged on the

15 scene and placed Daniel Carmona under arrest.

16 The prosecution intends to present evidence

17 that will show that the drug deals between Daniel

18 Carmona, the confidential informant, and the ATF

19 undercover agent could not have occurred without the

20 assistance of the defendant, Mr. Gaspar Leal,

21 providing drug dealer Daniel Carmona's phone number

22 to the confidential informant in this case.

23 The United States intends to present

24 different forms of evidence throughout this trial.

25 You will have the opportunity to review the drug

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   exhibits that were seized in connection with this

2   case. Those drug exhibits include the

3   methamphetamine that Daniel Carmona sold to the

4   confidential informant and the undercover agent on

5   July 25, 2016. It also includes the methamphetamine

6   that Daniel Carmona sold to the confidential

7   informant and the ATF undercover agent on August 3,

8   2016.

9          You will also have the opportunity to

10   listen to recorded jail calls that were made from the

11   defendant to the confidential informant with the

12   purpose of setting up a drug deal. You will also

13   have the opportunity to listen to the testimony of

14   the eyewitnesses in this case, which include the ATF

15   agents who conducted this investigation.

16          You will hear first from Special Agent Mike

17   Ramos, the lead investigator in this case. He will

18   provide you with some of the background that you will

19   need to understand this case and how this

20   investigation came to be.

21          You will also hear from the ATF undercover

22   agent who participated in the undercover deal with

23   the confidential informant on July 25 and August 3

24   with Daniel Carmona.

25          You will also hear from another ATF agent

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    named Jovianne Demas.  Agent Demas deposited money in

2    the defendant's jail account when he was locked up.

3    What you will learn is that it is common practice for

4    drug dealers to expect some form of payment in

5    exchange for setting up a drug deal like the kind

6    that occurred in this case.

7              You will also have the opportunity to

8    listen to the testimony of the confidential informant

9    himself.  I will not be referring -- the prosecution

10   will not be referring to the confidential informant

11   by name.  Given the nature of the work that the

12   confidential informant does for a living, the

13   prosecution will not use his real name.  Instead, the

14   prosecution will refer to him as confidential

15   informant.

16             The confidential informant is from Chicago.

17   He has worked with the ATF since approximately

18   October of 2012.  Since October of 2012, the ATF has

19   paid the confidential informant approximately

20   $125,550.  And just to clarify, that is over the

21   course of seven years.  For the confidential

22   informant's' work in this particular case throughout

23   the summer of 2016, the confidential informant was

24   paid $13,500.  The confidential informant has a prior

25   conviction from 2012 for DWI.  He's also been

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    arrested for driving on a suspended or a revoked

2    license.

3            The ATF will explain to you why it uses

4    confidential informants in investigations of this

5    type.  It is anticipated that the ATF will explain to

6    you that confidential informants play a vital role in

7    investigations of this type.

8            At the end of the prosecution's

9    case-in-chief, my colleague, Mr. Cairns, will return

10   to address you during what's called the closing

11   argument phase of the trial.  During the closing

12   arguments, Mr. Cairns will review with you all of the

13   evidence that the United States, the prosecution, has

14   presented you to convince you beyond a reasonable

15   doubt that the defendant is guilty of the claims

16   charged.

17           Ladies and gentlemen, at this early stage

18   of the trial, I submit to you that based on the

19   evidence that the prosecution will present, the

20   defendant -- you will be able to find that he is

21   guilty beyond a reasonable doubt.  Thank you.

22           THE COURT:  Thank you, Mr. Hurtado.

23           Mr. Bowles, do you have an opening

24   statement for Mr. Leal?

25           MR. BOWLES:  Yes, Your Honor.  Thank you.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    THE COURT:  Mr. Bowles.

2    MR. BOWLES:  Thank you, Judge, Counsel.

3    Ladies and gentlemen, good afternoon.  I

4    think you're going to find that by the end of this

5    trial that the Government successfully did create and

6    set up two drug transactions and they did accomplish

7    what they set out to do and they got the drugs.  And

8    we're not going to contest that.  You're going to see

9    these.  They did drug deals.

10    These drug deals, though, they did with

11    Daniel Carmona.  And one of the important things I

12    ask you to consider when you go through this trial is

13    everything they did to set up these transactions,

14    everything they did with it, it all involved somebody

15    else.  And I'll get to the point involving Mr. Leal.

16    But the point of the transfer of the

17    drugs -- and the charge is distribution and

18    conspiracy to distribute -- and the judge is going to

19    instruct you on what distribution means.  And it's

20    common sense.  You distribute by giving somebody

21    something else.  There is an instruction on that.

22    Mr. Leal wasn't involved in any of that.

23    He wasn't there on the two transactions, he didn't

24    distribute the drugs.  That was Daniel Carmona that

25    did that.  And you're going to also hear these calls,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    and I ask you, please, to listen to them closely and

2    to pay close attention to them, because they're all

3    going to involve other people.  They're going to

4    involve a man named Jose, and there is going to be

5    some other people the confidential informant talks

6    to.  But the only thing you're going to find that

7    Mr. Leal will have done is give him a name.

8            Now, you heard he's in jail, and he's in

9    jail with another individual, I think you're going to

10   hear evidence, a man named Mr. Arreola.  You're going

11   to hear these drugs are somebody else's.  They're not

12   Mr. Leal's.  I believe you'll hear evidence to that

13   effect.  And Mr. Arreola is in jail and these calls

14   are being made and the confidential informant is

15   setting up with the agent to do deals with Daniel

16   Carmona.  It's not involving Mr. Leal.  He's not

17   going to be present.  He's not going to be

18   distributing.

19           You're also going to hear that to do that,

20   to get these drugs -- and they use this confidential

21   informant; you'll hear about him; you'll see him

22   testify.  He's been doing this since 2012.  And what

23   he does, he goes across -- he's here and he comes in

24   and they pay him a bunch of money, and he gets with

25   people to set up deals.  And you heard and I'm going

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  to ask him on the stand and see what he says.  But

2  you heard the Government prosecutor tell you he's

3  made $125,000 over the past seven years working for

4  the Government.  Pretty good pay.  And what he does

5  for that money is, he goes around and he sets up

6  these deals.  That's his job.  And I think you're

7  going to hear when he talks about it on the stand, he

8  buys cars with it, pays for his expenses.  So that's

9  his role.  That's what he does.

10         And it worked.  They paid him.  But what it

11 worked for was to get drugs from Mr. Carmona.  And

12 again, as I said in voir dire, I asked you to pay

13 close attention to Judge Browning's instructions.

14 And Judge Browning is going to give you the law at

15 the end of the case, and he's going to define for you

16 what it means to distribute narcotics and what it

17 means to be involved in that, to participate, to

18 actively assist in that process, to conspire, and all

19 those terms.  He's going to define all those.  And at

20 the end, there is a conspiracy between Mr. Carmona

21 and the confidential informant, and those -- the

22 agent shows up and they do two deals.  But it's

23 involving those individuals.

24         And at the end of this case, based on the

25 evidence that you're going to hear and the law that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Judge Browning is going to give you, I ask you to

2  find Mr. Leal not guilty of the charges.

3          THE COURT:  All right.  Thank you,

4  Mr. Bowles.

5          Mr. Hurtado, does the Government have its

6  first witness or evidence?

7          MR. HURTADO:  Yes, sir, Your Honor.  The

8  United States calls Mr. Mike Ramos.

9          THE COURT:  Mr. Ramos, if you'll come up

10 and stand next to the witness box, before you're

11 seated, Ms. Bevel will swear you in.

12                  MICHAEL RAMOS,

13     after having been first duly sworn under oath,

14     was questioned, and testified as follows:

15         THE COURT:  Mr. Ramos.  Mr. Hurtado.

16         MR. HURTADO:  Yes, sir.

17         THE WITNESS:  Good afternoon, Your Honor.

18                DIRECT EXAMINATION

19 BY MR. HURTADO:

20     Q.   Sir, please tell us your name.

21     A.   Michael Ramos.

22     Q.   Where do you work?

23     A.   I'm a special agent with the Bureau of

24 Alcohol, Tobacco, Firearms and Explosives.

25     Q.   Is that also known as the ATF?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    Yes.

2        Q.    For those members of the jury who may not

3    be familiar with the ATF, can you tell us what the

4    ATF is?

5        A.    We're a federal agency that -- we

6    investigate federal violations involving firearms,

7    narcotics, arson, explosive laws.

8        Q.    And what is a special agent?

9        A.    We're a criminal investigator for the

10   agency.

11       Q.    As a law enforcement officer?

12       A.    Correct.

13       Q.    How long have you been an ATF agent?

14       A.    It will be 17 years next month.

15       Q.    Where are you assigned?

16       A.    Currently in the Maryville, Indiana, field

17   office, just outside of Chicago.

18       Q.    Are you familiar with an investigation that

19   took place here in Albuquerque by the ATF in 2016?

20       A.    Yes, sir.

21       Q.    In 2016, did you have occasion to work with

22   a confidential informant in an investigation that the

23   ATF was conducting?

24       A.    Yes, sir.

25       Q.    And what was your relationship to this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    confidential informant?

2         A.    I was the confidential informant's primary

3    handler.  So I had day-to-day interactions with the

4    confidential informant.

5         Q.    Does that mean you supervised the

6    informant?

7         A.    Yes, sir.

8         Q.    Can you tell the members of the jury what a

9    confidential informant is?

10        A.    A confidential informant is an individual

11   that works on our behalf.  We direct them into

12   neighborhoods to find us individuals that we're

13   interested in investigating.

14        Q.    To clarify, a confidential informant is not

15   a law enforcement officer; is that correct?

16        A.    That's correct.

17        Q.    Does not carry a badge?

18        A.    No, sir.

19        Q.    Or a gun?

20        A.    No, he does not.

21        Q.    Or ATF-issued credentials of any sort?

22        A.    Correct.

23        Q.    Why does the ATF use a confidential

24   informant as opposed to, say, yourself, an ATF agent,

25   to go out and work the streets?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.    Simply put, confidential informants -- they

2  can relate to individuals that we want to investigate

3  better than we can.  Our job is to affect violent

4  crime in the communities that we work and live in,

5  and confidential informants are necessary for us to

6  do that.

7      Q.    With respect for the confidential informant

8  in this case, do you pay him?

9      A.    Yes, sir.

10     Q.    How long has this confidential informant

11 been working for the ATF?

12     A.    Since October of 2012.

13     Q.    Can you tell the members of the jury how

14 much the confidential informant has been paid since

15 October of 2012?

16     A.    Since October of 2012, the confidential

17 informant has been paid approximately $125,550.

18     Q.    Now, that sounds like a lot of money, but

19 if you were to break it down since October 2012 to

20 now, about how much does that come out to per year?

21     A.    About $17,900 a year.

22     Q.    Is it customary for the ATF to pay

23 confidential informants?

24     A.    Yes, sir.

25     Q.    With respect to the confidential informant

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    in this case, have you in the past, first of all,

2    worked with him because you're his handler; correct?

3         A.   Correct.

4         Q.   Have you found him to be reliable, in your

5    experience?

6         A.   Yes.

7         Q.   Accurate?

8         A.   Yes.

9         Q.   Complete?

10        A.   Yes, sir.

11        Q.   Has the ATF corroborated the information

12   that the confidential informant has supplied you in

13   the past?

14        A.   Yes, sir, we have.

15        Q.   Have you ever provided him with any

16   instructions that he needs to follow before you put

17   him out to work on the streets?

18        A.   Yes, sir, we do.

19        Q.   Tell us about that.

20        A.   We advise the informants not to engage in

21   illegal activity, drug use.  The informants are

22   searched before and after every transaction that we

23   do with the informants.

24        Q.   Just to clarify the word "transaction," are

25   you talking about drug deals?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Drug deals, firearms transactions,

2   controlled purchases, as we call them.

3      Q.   Undercover deals?

4      A.   Correct.

5      Q.   And why do you search them before and after

6   these deals?

7      A.   We want to maintain the integrity of the

8   investigation.  We search the informants for

9   excessive monies, contraband, firearms, narcotics,

10  paraphernalia.

11     Q.   With respect to the confidential informant

12  in this investigation, have you ever found him to be

13  in possession of large sums of money or drugs or any

14  other contraband?

15     A.   No, sir.

16     Q.   To your knowledge, has he ever been

17  reprimanded by the ATF for any operations he's

18  conducted?

19     A.   No, not to my knowledge.

20     Q.   Have you ever known the confidential

21  informant in this case to use drugs and/or alcohol?

22     A.   No, sir.

23     Q.   Have you ever known him to be under the

24  influence of drugs or alcohol during an operation?

25     A.   No, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.  If he were under the influence of drugs or

2  alcohol on an operation, what would you do as his

3  handler?

4     A.  We would not move forward with that

5  transaction, first off.

6     Q.  Anything else?  I didn't know if I was

7  interrupting you.

8     A.  No.

9     Q.  Now, I want to direct your attention to the

10  investigation in this case.  Can you tell the jury

11  more or less how this investigation came to be?  For

12  example, how is it that the confidential informant

13  came to have contact with the defendant, Mr. Leal?

14     A.  Mr. Leal was passing out business cards in

15  the city of Albuquerque.  It was -- he was -- he had

16  business cards that he was a mobile barber.  He

17  actually gave one of those business cards to -- at

18  the time, he was an ATF task force officer.  He was

19  an Albuquerque Police Department officer at the time,

20  assigned to ATF.  That task force officer gave that

21  business card to me, and I instructed the informant

22  to give Mr. Leal a call to go get a haircut and to

23  see if Mr. Leal was engaged in any sort of criminal

24  activity.

25     Q.  Did the confidential informant follow your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   instruction?

2       A.   Yes, he did.

3       Q.   Did he make contact with Mr. Leal, the

4   defendant?

5       A.   He did.

6       Q.   And what happened?

7       A.   They arranged for a haircut that occurred

8   at the apartment of Mr. Leal.

9       Q.   Did the confidential informant actually go

10  through and follow up by visiting Mr. Leal at his

11  apartment?

12      A.   Yes, sir.

13      Q.   Are you aware of the confidential informant

14  continuing this investigation in July of 2016?

15      A.   Yes, sir, I am.

16      Q.   And by the way, as you are participating in

17  this investigation and conducting this investigation,

18  are you having regular contact with the confidential

19  informant?

20      A.   Multiple times a day.

21      Q.   Multiple times a day?

22      A.   Yes.

23      Q.   Would it be accurate to say that the

24  confidential informant is or has to act under your

25  authorization at all times?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.    Yes, sir.

2       Q.    To your knowledge, did he ever do anything

3    that was outside of your knowledge or your

4    authorization?

5       A.    Not to my knowledge.

6       Q.    Did the confidential informant have contact

7    with the defendant, Mr. Leal, in July of 2016?

8       A.    Yes, sir.

9       Q.    Listen very carefully to my next question.

10   In July of 2016, did the confidential informant have

11   any discussions with the defendant about drugs?

12      A.    Yes, sir.

13      Q.    Do you know where the defendant, Mr. Leal,

14   was in July of 2016?

15      A.    He was in a correctional facility in the

16   state of New Mexico.

17      Q.    Now, you as the case agent, what did you

18   decide to do with respect to the confidential

19   informant's participation in this case?

20      A.    We decided to follow through with arranging

21   a narcotics transaction based on the phone number

22   that was provided by Mr. Leal to the confidential

23   informant.

24      Q.    So that was a lot of information, so let's

25   go back and flesh out some more detail.  You

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

indicated that Mr. Leal was in jail; correct?
A. Yes, sir.
Q. So who made the initial contact?
A. Mr. Leal made the initial contact with the informant.
Q. And tell us for what purpose.
A. To arrange a narcotic --
MR. BOWLES: Object to form. I'm sorry, Your Honor. Object to that question.
THE COURT: Overruled.
MR. BOWLES: Speculation.
THE COURT: Well, I think he can answer it. Overruled.
BY MR. HURTADO:
Q. Agent, why did Mr. Leal, the defendant, call the confidential informant from jail?
A. To arrange a narcotics transaction.
Q. Okay. Now, as the case agent, I imagine you've had the opportunity to review the phone calls that were made in connection to this case?
A. Yes, sir.
Q. Based on your training and experience, how certain are you that Mr. Leal was arranging a drug deal with the confidential informant, as opposed to something else?

1        MR. BOWLES:  And Your Honor, I'm going to

2   object.  Speculation, lack of foundation.

3        THE COURT:  Well, I'll let you deal with

4   this on cross as to how he knows.  But I'll allow him

5   to testify.  Overruled.

6   BY MR. HURTADO:

7        Q.   Sir, can you answer that question, or did

8   you want me to repeat the question?

9        A.   I can answer it.

10       Q.   Go ahead.

11       A.   We were very certain that it was a

12   narcotics transaction about to occur.

13       Q.   And just to clarify one point, you yourself

14   did not have any personal contact with the defendant,

15   Mr. Leal; correct?

16       A.   Never.

17       Q.   You never interacted with him face-to-face?

18       A.   No, sir.

19       Q.   You never spoke with him on the phone;

20   correct?

21       A.   No.

22       Q.   Anytime the confidential informant had

23   contact with Mr. Leal, did you make sure to review

24   those contacts?

25       A.   Yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      Q.   And are the contacts that the confidential

2  informant recorded in any way?

3      A.   They were all recorded.

4      Q.   And please tell us how that works.  Go into

5  a little bit more detail.

6      A.   They were recorded because I put an app on

7  the informant's phone which automatically records

8  incoming and outgoing phone calls and text messages.

9      Q.   Is there any way for that confidential

10  informant to in any way delete or tamper with the

11  recording once it's been made?

12      A.   No, sir.  The phone calls are on a server.

13  It's protected with the user name and password and

14  it's controlled by the ATF.

15      Q.   Specifically is it controlled by you?

16      A.   Correct.

17      Q.   Is there any way that confidential

18  informant can have access to those recorded calls?

19      A.   There is no way.

20      Q.   Again, you've listened to the phone calls.

21  When you listened to those phone calls, was there

22  ever anything that indicated to you that Mr. Leal,

23  the defendant, did not know what he was doing?  For

24  example, did he ever express that he was confused

25  about what it was that the confidential informant

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  wanted?

2      A.   No, sir.

3      Q.   Were there ever any occasions where the

4  defendant expressed any reservations about

5  interacting with the confidential informant?

6      A.   No.

7      Q.   Were there ever any occasions when the

8  defendant may have said things such as, "Please leave

9  me alone.  Go away.  I don't want to work with you.

10 Please leave"?

11     A.   No.  All of the phone calls were incoming

12 to the confidential informant.

13     Q.   Why is that noteworthy?  Why should the

14 jury appreciate that?

15     A.   Because Mr. Leal was arranging a

16 transaction.  He was the one calling our informant.

17 We were not calling him.

18     Q.   In other words, he was initiating that

19 contact?

20     A.   That's correct.

21     Q.   If the defendant, Mr. Leal, had, in fact,

22 been saying to your confidential informant to leave

23 him alone, what would you have done?

24     A.   We would have left him alone.

25     Q.   Are there other criminal targets in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Albuquerque that you could have focused on?

2         A.   Yes, sir.

3         Q.   So based on the phone calls that Mr. Leal

4    made for the confidential informant in July of 2016,

5    what happened?

6         A.   A narcotics investigation was initiated

7    with Daniel Carmona.

8         Q.   And who is Daniel Carmona?

9         A.   He is a drug dealer in the city of

10   Albuquerque.

11        Q.   Did the defendant, Mr. Leal, ever make

12   reference to the name Daniel Carmona?

13        A.   No, I believe they referred to him as

14   Primo.

15        Q.   Primo.  Do you know whether the

16   confidential informant also knew Daniel Carmona as

17   Primo?

18        A.   Correct.

19        Q.   Based on -- first of all, let me ask you

20   this.  Did the defendant, Mr. Leal, provide Daniel

21   Carmona's phone number to the confidential informant?

22        A.   Yes, he did.

23        Q.   And based on that information, what did the

24   confidential informant do?

25        A.   Placed a phone call to Daniel.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       Q.    Was Daniel Carmona responsive?

2       A.    Yes.

3       Q.    What did Daniel Carmona do or say?

4       A.    He ultimately sold us crystal

5 methamphetamine.

6       Q.    Sold who crystal methamphetamine?

7       A.    The confidential informant and an ATF

8 undercover agent.

9       Q.    And when was this?

10      A.    On July 25, 2016, and August 3, 2016.

11      Q.    You indicated that the confidential

12 informant was accompanied by an ATF undercover agent?

13      A.    Yes, sir.

14      Q.    Why did you use an undercover agent to go

15 conduct the drug deal with the confidential

16 informant?  In other words, why not just let the

17 confidential informant go off and do the drug deal

18 with Daniel Carmona on his own?

19      A.    Our goal with many investigations is to try

20 to insert an ATF undercover agent into the

21 investigation.  It's primarily for the safety of the

22 confidential informant.

23      Q.    And on that date, July 25, 2016, were the

24 confidential informant and ATF undercover agent

25 successful in buying methamphetamine --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.    Yes, they were.

2    Q.    -- from Daniel Carmona?

3    A.    Yes, sir, they were.

4    Q.    Would you happen to have the particulars as

5    far as how much methamphetamine was sold?

6    A.    Yes, sir.

7    Q.    How much was it?

8    A.    Approximately 2 ounces of crystal

9    methamphetamine.

10   Q.    Do you know whether the confidential

11   informant or the ATF agent paid Daniel Carmona money

12   for this?

13   A.    He did.

14   Q.    Do you know how much it was?

15   A.    I believe it was $1,100.  $550 per ounce.

16   Q.    And is that a standard price for 2 ounces

17   of methamphetamine here in Albuquerque?

18   A.    Fair price.

19   Q.    Tell us, you said there were two deals, one

20   in August of 2016; is that correct?

21   A.    Yes, sir.

22   Q.    Tell the jury what happened on that

23   occasion.

24   A.    The transaction occurred on August 3, 2016.

25   Again, the transaction was set for approximately 2

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  ounces of crystal methamphetamine, and the plan was

2  to arrest Daniel Carmona after the transaction was

3  concluded.

4      Q.   And what was the setup like?  Was it again

5  a confidential informant and an ATF undercover agent

6  buying the drugs from Daniel Carmona?

7      A.   Yes, sir.  Everything was recorded between

8  the confidential informant and Daniel Carmona.

9      Q.   And on August 3, 2016, did Daniel Carmona,

10  in fact, show up to the scene of the drug deal with

11  additional methamphetamine?

12      A.   Yes, sir, he did.

13      Q.   How much was it?

14      A.   Approximately 2 ounces.

15      Q.   And how much did you guys pay this time?

16      A.   That I don't recall, but -- I don't recall

17  the price on that one.  I don't know if he gave us

18  another price since we were a return customer.

19      Q.   Actually, I believe you stated you placed

20  him under arrest that day.

21      A.   Yes, sir.

22      Q.   So you indicated that you placed

23  Mr. Carmona under arrest on August 3, 2016.  Why did

24  you not place him under arrest after the first drug

25  deal on July 25, 2016?  In other words, why did you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  wait for another drug deal to occur on August 3,

2  2016?

3      A.    August 3, 2016, is when we were wrapping up

4  our investigation, our time in Albuquerque.  If we

5  would have arrested Mr. Carmona in July, it would

6  have compromised the confidential informant and our

7  ATF undercover as law enforcement.

8      Q.    After this deal on August 3, 2016, did you

9  have an opportunity to meet with the confidential

10  informant?

11      A.    Yes, we meet the informants right after the

12  buy at a predetermined location.

13      Q.    When you met with him, what did you do with

14  him?

15      A.    The informant is again searched.

16      Q.    And what was the result of the search?

17      A.    Negative for contraband.

18      Q.    When you had the opportunity to see the

19  confidential informant, did he appear to you to be

20  under the influence of drugs or alcohol?

21      A.    No, sir.

22      Q.    Now, Agent Ramos, I'm going to approach you

23  with a couple of drug exhibits that have already been

24  admitted into evidence so you can discuss them.  I

25  want to hand them to you and then you tell me what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    they are.

2         A.   Thank you.

3         Q.   Agent, do you recognize those drug

4    exhibits?

5         A.   Yes, sir, I do.

6         Q.   Please tell the jury what they are.

7         A.   This is the crystal methamphetamine that

8    was purchased on July 25, 2016, and August 3, 2016,

9    from Daniel Carmona.

10        Q.   I'll retrieve those from you, Agent.

11             MR. HURTADO:  May the prosecution have a

12   brief moment to confer with his co-counsel?

13             THE COURT:  You may.

14   BY MR. HURTADO:

15        Q.   I apologize, Agent.  I glossed over an

16   important detail.  Can you tell us how many ounces --

17   or how many grams are in one ounce?

18        A.   Approximately 28 grams.

19        Q.   Twenty-eight grams.  So if the ATF

20   purchased 2 ounces of methamphetamine, more or less,

21   how many grams would that be?

22        A.   Approximately 56 grams.

23        Q.   The drug exhibits that I just handed you --

24   were these drug exhibits submitted to a lab for a

25   forensic analysis?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.    Yes, the DEA laboratory.

2      Q.    Would you happen to know how much the exact

3  amounts were?

4      A.    I do not.

5      Q.    How about this?  Do you happen to know

6  whether they were more than 50 grams?

7      A.    They were.

8            MR. HURTADO:  Your Honor, I have no further

9  questions for Agent Ramos.

10           THE COURT:  Thank you, Mr. Hurtado.

11           Mr. Bowles, do you have cross-examination

12  of Mr. Ramos?

13           MR. BOWLES:  Yes, Your Honor.

14           THE COURT:  Mr. Bowles.

15                    CROSS-EXAMINATION

16  BY MR. BOWLES:

17     Q.    Agent Ramos, when you began working with

18  the confidential informant, did that start off in

19  Chicago?

20     A.    Yes, sir.

21     Q.    And that was in approximately 2012; is that

22  correct?

23     A.    That's correct.

24     Q.    And the confidential informant worked a

25  number of cases with the ATF over the last seven

---

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    years; is that correct?

2         A.    From 2012 to current, yes, sir.

3         Q.    Now, how did the confidential informant

4    come to be working with the ATF in 2012?

5         A.    Actually, I was referred to this

6    confidential informant by the Chicago Police

7    Department.  An individual that I knew that is an

8    officer with the Chicago Police Department.

9         Q.    So had this confidential informant been

10   working with the Chicago PD prior to ATF?

11        A.    Yes, sir.

12        Q.    And my understanding, he was working with

13   the FBI, as well, prior to that; is that right?

14        A.    That's correct.

15        Q.    And that dates back to 2005, approximately,

16   timeframe?

17        A.    I'm not sure, sir.

18        Q.    Okay.  And sir, do you have any idea how

19   much this individual has been paid in all the time

20   he's worked for the PD, the FBI, and the ATF?

21        A.    No, sir.  I don't know those numbers prior

22   to us.

23        Q.    So just the ATF side, I think you said he

24   was paid $125,000, roughly?

25        A.    Roughly.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.    And you said that was about $17,900 per

2  year; is that correct?

3    A.    Yes, sir.

4    Q.    Do you go back and look and make sure that

5  he reports that on his taxes?

6    A.    I do not.  But when they sign the receipt

7  for being paid, they initial a line that says it's

8  their responsibility to do that.

9    Q.    So is there anybody in the Government that

10  goes back and makes sure that this guy is actually

11  reporting on his taxes?  Is there anybody that does

12  that?

13    A.    Not that I'm aware.

14    Q.    So how is this money paid to him?  Is it

15  cash or check?  How do you give that to him?

16    A.    It's cash.  It's cash that we keep within

17  our office.

18    Q.    So is this handed to him on a monthly

19  basis, a yearly basis, or how do you give him the

20  cash?

21    A.    It's usually handed to the informant after

22  a transaction.

23    Q.    So when he does a transaction, does that

24  mean it has to be a successful transaction?  Is that

25  when he gets the cash?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



1      A.  I have paid informants for deals that they

2  attempted to put together that did not go through

3  fruition.  They've also been paid if a deal does not

4  go.

5      Q.  Do they get paid the same amount?

6      A.  Sometimes.  Sometimes not.

7      Q.  Okay.  So on occasion they get paid more, I

8  would assume, if they have a successful deal, for

9  example?  They go ahead and they get drugs from a

10  guy, they get paid the full amount?

11      A.  Yes, on these four-month initiatives, which

12  this was one of those, they're paid a set amount.  So

13  he did not get paid additional money for these

14  transactions.  It was a set amount, prearranged.

15      Q.  So now, I'm sure you have more than this

16  guy working.  There are other confidential

17  informants?

18      A.  I have several.

19      Q.  And then you're paying them all cash.  Now,

20  nobody is watching if they're reporting on their

21  taxes, but are you keeping track of this cash that's

22  being paid to them?

23      A.  We keep a running tally of the amount

24  they're paid; correct.

25      Q.  Is that sent to the IRS or sent to any tax

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    agency?

2          A.    No, sir.

3          Q.    So in terms of his finances, did you ever

4    run an investigation midway through or while he's

5    working for you to see if he's got any other source

6    of funds while he's working for you?

7          A.    He's had employment while he's worked for

8    me as a confidential informant.

9          Q.    Do you know what type of employment?

10         A.    Like a forklift driver.

11         Q.    Do you ever check to see if -- because

12   confidential informants, in your experience,

13   sometimes they double-deal; sometimes they still do

14   criminal acts.  Have you had that in your experience

15   as an agent?

16         A.    I've had that in my experience, yes.

17         Q.    And that happens; right?

18         A.    It does happen.

19         Q.    And so what's your mechanism to ensure that

20   this confidential informant wasn't dealing drugs on

21   the side or wasn't using drugs?  How do you ensure

22   that?

23         A.    We ensure that by -- we search the

24   informants prior to and after every single

25   transaction.  We corroborate their information that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  they give us by running phone numbers, license

2  plates, those sorts of things.

3       Q.   Do you drug-test them?

4       A.   We do not.

5       Q.   So you never drug-tested this informant in

6  seven years?

7       A.   Correct.

8       Q.   I think you said in your direct examination

9  that you never knew this informant to be using

10  alcohol?

11      A.   Not in my -- I've never witnessed it.

12      Q.   Were you aware that -- and you signed him

13  up in approximately October 2012; correct?

14      A.   Yes, sir.

15      Q.   Were you aware that in that year he was

16  arrested for DUI?

17      A.   I was.

18      Q.   Okay.  So you knew that he had at least on

19  one occasion driven while drinking?

20      A.   He was arrested for it; correct.

21      Q.   Do you know whether he was found guilty?

22      A.   I believe it was dismissed.

23      Q.   Do you know why it was dismissed?  Did the

24  agency help in any of that?

25      A.   Not that I recall.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Did anybody from the ATF contact the police

2   to get that dismissed, or did they help with that?

3      A.   Not that I recall.

4      Q.   Okay.  Did you follow up to determine if he

5   had any probation or any requirements as a result of

6   that case?

7      A.   Not that I recall.

8      Q.   Now, as part of your contract with these

9   confidential informants and with the one in this

10  case, one of the things you tell them is:  "You're

11  not to commit crimes while you're working for us."

12  Is that fair to say?

13     A.   Fair to say.

14     Q.   Now, what would happen if the confidential

15  informant, while he's working for you, commits a

16  crime?

17     A.   It depends on the crime.  But they could be

18  terminated from usage.

19     Q.   And is that in the discretion of the

20  agency?

21     A.   It is.

22     Q.   Now, in the course of this case, were you

23  aware that after you had signed up this confidential

24  informant, he was driving on a suspended license

25  through Illinois?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   I was aware that he was arrested for

2  driving while suspended.

3      Q.   Prior to him being arrested, were you told

4  by the confidential informant that he's driving

5  around on a suspended license?

6      A.   I was not told, but I assisted -- I

7  actually recall driving the informant to a couple

8  locations in the city of Chicago to get his driver's

9  license reinstated, because he could not have a

10  suspended driver's license and continue working for

11  us.

12      Q.   Well, before you knew that, he was doing

13  deals for you and driving around on a suspended

14  license; you just didn't know he had suspended

15  license?

16      A.   I did not know.

17      Q.   So the confidential informant, you would

18  agree with me, was doing deals for you and had not

19  told you that his license was suspended at least for

20  a time?

21      A.   At least for a time.

22      Q.   And would you consider that that he

23  withheld information from you?

24      A.   I didn't ask, so...

25      Q.   That's something that you want to know as a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    case agent, don't you?  The handler?  If somebody is

2    committing crimes in the state of Illinois, driving

3    around without a license, don't you want to know

4    that?

5         A.   Sure.

6         Q.   Okay.  And I'm just trying to establish --

7    so this confidential informant didn't report to you

8    that information?

9         A.   I don't recall him reporting that

10   information.

11        Q.   Because if he had told you, you would have

12   addressed it right away?

13        A.   We would have had to have, yes.

14        Q.   After you took him around to get him a new

15   license, did he ever say anything to you?  Did he

16   ever explain it to you, what happened?

17        A.   Not that I recall.  It was several years

18   ago.

19        Q.   This was in 2015.  If his DUI was dismissed

20   in 2012, how did his license get suspended?

21        A.   I don't know, sir.  I believe he had some

22   outstanding fines, possibly some traffic light

23   tickets that were unpaid.

24        Q.   Is that the only DUI in the last seven

25   years that you're aware of for Mr. -- arrests for the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  confidential informant?

2       A.   There was a second incident for DUI.

3       Q.   In 2013?

4       A.   I believe it was 2013 and possibly 2015.

5       Q.   And again, I'm going back to when you said

6  you're not aware of him -- and I know in your

7  presence, because you would have addressed it, he

8  wasn't drinking.  But at least we now know there were

9  multiple instances of DUI while he was working as a

10 paid informant for you all.

11      A.   At least two occasions.

12      Q.   At least two occasions.  Do you know what

13 happened in that subsequent DUI?

14      A.   I do not, sir.

15      Q.   Now, on direct examination you talked about

16 the calls -- and I just want to pin these down -- in

17 July.  Isn't it true that the 7/21 call was between a

18 man named Jose Casias and the confidential informant?

19      A.   Yes, I believe so.

20      Q.   And Jose Casias discussed words to the

21 effect that he sells marijuana, but he talked a

22 little bit more about some other stuff.  Do you

23 recall that call?

24      A.   I do recall that.

25      Q.   And the July 24 call -- that was between

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Luis -- he was one of the speakers on that call;

2  correct?

3       A.   Luis who?

4       Q.   Do you know who that is?  Luis?

5       A.   I know two Luises.

6       Q.   Do you know a man named Arreola?

7       A.   Yes, sir.

8       Q.   And can you tell the jury who that is?

9       A.   He was incarcerated with Mr. Leal.

10      Q.   And you know from being on this case, being

11  the case agent, you know that Mr. Arreola -- you

12  suspect that the drugs that Carmona sold were Mr.

13  Arreola's?

14      A.   It was an associate of Mr. Arreola's.

15  Carmona.

16      Q.   I'm sorry, it was an associate of Mr.

17  Arreola and Mr. Carmona who had these drugs?

18      A.   Correct.

19      Q.   And you know that Mr. Arreola was

20  incarcerated with Mr. Leal.

21      A.   That's correct.

22      Q.   One of the calls that occurred was a woman

23  named Barraza?

24      A.   I believe that's the girlfriend or wife of

25  Mr. Arreola.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Q.   And so Mr. Arreola's wife was talking to

2     the confidential informant, and she was the one that

3     eventually gave Carmona's name, wasn't she?

4          A.   I don't recall that.

5          Q.   And Carmona is the one that actually ended

6     up selling the drugs on the two occasions, July 25

7     and August 3?

8          A.   That's correct.  But Mr. Carmona's phone

9     number was provided to the confidential informant by

10    Mr. Leal.

11         Q.   And do you know whether he got that from

12    Mr. Arreola while he was in prison with him?

13         A.   I don't know that, sir.

14         Q.   Because in reality, Mr. Arreola needed to

15    sell those drugs; right?  Or his associate did?  They

16    were the ones who wanted to sell it.

17         A.   I don't know that they needed to sell it.

18         Q.   Well, they were the ones that had the

19    drugs.  You've investigated this.  You know who had

20    the drugs.

21         A.   Mr. Carmona had drugs, because they were

22    incarcerated.

23         Q.   Well, not because they were incarcerated;

24    because somebody, Mr. Arreola's associate, was

25    working with Carmona to sell those drugs.  That was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   what was really happening, wasn't it?

2       A.   Yes, Mr. Leal and Mr. Arreola contacted the

3   confidential informant and provided the informant

4   with Mr. Carmona's phone number to arrange --

5       Q.   Let me simplify my question.  These drugs

6   were whose?  An associate of Mr. Arreola.  Who was

7   that?

8       A.   Daniel Carmona.

9       Q.   Okay.  The call with Barrazas was to

10  accomplish ultimately getting to Carmona, correct,

11  for the confidential informant to eventually get to

12  Carmona?

13      A.   There was an association between Barrazas

14  and Carmona.

15      Q.   And Jose Casias, after that initial call on

16  July 21 -- he drops out of the picture; correct?

17      A.   I believe so.  It's my understanding that

18  Jose Casias is a relative of Mr. Leal.

19      Q.   So Jose Casias doesn't sell the drugs?

20      A.   There was never a narcotics transaction

21  with Mr. Casias.

22      Q.   So the only two we're talking about here

23  and the drugs we have are the two transactions with

24  Carmona and the confidential informant where the

25  drugs actually change hands; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          A.    That's correct.

2          Q.    Now, you were there.  You were present,

3    weren't you?

4          A.    I was present for both transactions.

5          Q.    And just to clarify for the jury, Mr. Leal

6    wasn't present at either of those transactions?

7          A.    He was not.

8          Q.    And Mr. Casias wasn't present at those

9    transactions?

10         A.    He was not.

11         Q.    Now, Mr. Arreola -- who else is he related

12   to in this case?  Do you know if he's related to

13   Daniel Carmona?

14         A.    I believe their significant others are

15   related to each other.

16         Q.    And so girlfriend or wife, or whoever it

17   is, they're related?

18         A.    Right.

19         Q.    And that's the connect between Arreola and

20   Carmona?

21         A.    That's my understanding.

22         Q.    Now, between the Casias call, the 7/24 call

23   and there is a Barrazas call -- do you know if there

24   are any other calls I'm missing?  There is 7/21,

25   7/24, and 7/25; is that right?  And then there is a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    transaction on 7/25; is that correct?

2        A.   I believe there are other calls.

3        Q.   Okay.  And there is also a transaction on

4    8/3 with the drugs; is that right?

5        A.   Yes, sir.

6        Q.   Did you pay this confidential informant for

7    this trial?  Are you giving him money for this trial?

8        A.   I'm not personally, but I believe he is

9    making some sort of subsistence.

10       Q.   So the ATF is paying him to be here and

11   testify?

12       A.   I believe so.  I'm not doing that.

13       Q.   Do you know how much he's paid for this

14   trial?

15       A.   I do not know, sir.

16       Q.   Do they also pay his travel down?  Or how

17   does he get down here?

18       A.   They pay for his flight.

19       Q.   Flight.  Then they pay for his hotel?

20       A.   Yes, sir.

21       Q.   And then they pay him money for testifying?

22       A.   Per diem for meals and gas and that sort of

23   stuff.

24       Q.   And you don't know how much that is?  Does

25   he get paid for the whole week, or do you know?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   I don't.  The informant actually drove

2   here.  So in this instance, we did not pay for a

3   flight, but we have paid for flights in the past.

4      Q.   So when they drive, you pay them mileage,

5   don't you, by the IRS rules?

6      A.   A lot of times they get paid for their

7   mileage; they're reimbursed.

8      Q.   That's the Government mileage, it's 55

9   cents?

10     A.   No, I think it's far less than that.  I

11  don't recall.  I think it's under 20 cents a mile, I

12  believe.

13     Q.   Twenty cents?

14     A.   I believe.  I'm not for certain.

15     Q.   Then they get a check or you give them cash

16  for that?

17     A.   I believe that's handled by the United

18  States Attorney's Office, not by ATF.

19          MR. BOWLES:  Your Honor, I have nothing

20  further.

21          THE COURT:  Thank you, Mr. Bowles.

22          Mr. Hurtado, do you have redirect of Mr.

23  Ramos?

24          MR. HURTADO:  Yes, sir.

25          THE COURT:  Mr. Hurtado.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

REDIRECT EXAMINATION

BY MR. HURTADO:

    Q.   Sir, I want to direct your attention to the part of Mr. Bowles' cross-examination where he references the DWI that the confidential informant was arrested for.  Do you remember that?

    A.   Slightly.

    Q.   Slightly.  I just want to clarify one thing.  When the confidential informant was arrested in connection with that DWI, he was not actually working an operation for the ATF at the time; is that correct?

    A.   That's correct.

    Q.   Are you aware that a DWI is a misdemeanor?

    A.   It is.

    Q.   Is that something for which you would customarily deactivate or fire a confidential informant for doing?

    A.   No, sir.  That wouldn't be grounds for termination.

    Q.   Now Mr. Bowles made reference to payment or subsistence, I think you called it, for the confidential informant.  Does that subsistence pay in any way -- is it in any way contingent upon him giving certain kinds of testimony?  Do you understand

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  what I'm trying to say?  If you do not understand,

2  just let me know and I'll rephrase it.

3      A.  It's not contingent on any sort of

4  testimony.

5      Q.  Is that subsistence pay simply designed to

6  cover his daily expenses?

7      A.  Yes.

8      Q.  Food?

9      A.  Correct.

10     Q.  Hotel?

11     A.  Correct.

12     Q.  You work for the ATF.  You are a Government

13  agent; correct?

14     A.  Yes, sir.

15     Q.  Did you get a hotel to be here today?

16     A.  Yes, sir.

17     Q.  Are you driving a government vehicle?

18     A.  I flew here and rented a car.

19     Q.  When you flew here, does the ATF pick up

20  the tab for your flight here?

21     A.  Yes, sir, they do.

22     Q.  So none of this comes out of your pocket,

23  either?

24     A.  No, sir.

25     Q.  So is the type of pay that the confidential

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    informant gets to be here the same as what the ATF
2    pays you to be here?
3         A.   It's very similar.  We're given a per diem.
4    So for meals.
5         Q.   A per diem.  Is that like subsistence?
6         A.   Yes.
7         Q.   Agent, at this time, in light of the fact
8    that Mr. Bowles has made reference to the phone calls
9    that were made by Mr. Leal, I think it would be
10   fruitful to play some of those phone calls.
11        MR. HURTADO:  With that said, however, Your
12   Honor, may the parties approach the bench?
13        THE COURT:  You may.
14        (The following proceedings were held at the
15   bench.)
16        MR. HURTADO:  Your Honor, I'd like to play
17   the phone calls that Mr. Leal made from jail.  I
18   wanted to advise the Court that the prosecution has
19   prepared transcripts, written transcripts, of the
20   audio recordings, and I was wondering if the Court
21   would be okay with the prosecution distributing the
22   transcripts to the jury while the prosecution plays
23   the audio record phone calls.
24        THE COURT:  Any objection, Mr. Bowles?
25        MR. BOWLES:  I don't, Your Honor, but I was



SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 820-6349                                  FAX (505) 843-9492
                                                          1-800-669-9492
PROFESSIONAL COURT                        e-mail: info@litsupport.com
REPORTING SERVICE

1    wondering why these weren't played on the direct

2    examination.  I wasn't sure if he was going to play

3    them.

4              THE COURT:  If you want to do some redirect

5    for the calls, or recross, I'll let you do that.  Is

6    that okay?

7              MR. BOWLES:  Yes.

8              THE COURT:  So you can distribute them.

9              MR. HURTADO:  Yes, sir, thank you.

10             (The following proceedings were held in

11   open court.)

12             THE COURT:  All right, Mr. Hurtado.

13             MR. HURTADO:  Yes, sir.  Your Honor, before

14   playing those phone calls I just wanted to advise the

15   Court as well as defense counsel that the United

16   States has prepared written transcripts of the audio

17   recorded phone calls.  At this time, I'll distribute

18   those written transcripts to the members of the jury.

19             THE COURT:  You may.

20             MR. HURTADO:  Your Honor, would you like a

21   copy?

22             THE COURT:  Certainly.

23             MR. HURTADO:  Mr. Bowles.

24             MR. BOWLES:  Yes, thank you.

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    BY MR. HURTADO:

2         Q.   Agent, before we get started with these

3    calls, two of these are very brief.  There is one

4    that is 13 minutes, but I'd like to play them for

5    you.

6              MR. HURTADO:  At this time, could I use

7    the --

8         Q.   So Agent, what I'm going to do is play the

9    phone calls from Mr. Leal in July, and then I'm going

10   to have you go over them with me.

11        A.   Okay.

12        Q.   So here is the first call.

13        A.   Yes, sir.

14        Q.   It's very short.

15             (Tape played.)

16        Q.   So Agent, first of all, I'll readily admit

17   that the transcript is not the best possible

18   transcript.  But are you familiar with this phone

19   call?

20        A.   Yes, sir.

21        Q.   Have you listened to this phone call

22   before?

23        A.   Yes, I have.

24        Q.   And what date was this phone call made?

25        A.   I believe it was July 21, 2016.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   And who was making this phone call?

2    A.   It was an incoming phone call from Mr. Leal

3  to the confidential informant.

4    Q.   So Gaspar Leal is listed here in this

5  transcript as one of the speakers; correct?

6    A.   Yes, sir.

7    Q.   And CHS.  That's confidential human source,

8  which is another name for a confidential informant;

9  is that correct?

10    A.   That's correct.

11    Q.   Now, based on your knowledge of this case,

12  who is Jose?  Is Jose the same person that Mr. Bowles

13  talked about during his cross-examination of you,

14  meaning Jose Casias?

15    A.   Yes, sir.

16    Q.   And what is Mr. Leal, the defendant, trying

17  to do here based on what you know of this

18  investigation?

19        MR. BOWLES:  Your Honor, I'm going to

20  object again.  The call speaks for itself.  And the

21  agent's characterization of it -- the call speaks for

22  itself.

23        THE COURT:  Well, let's let the jury hear

24  what the call says, and they can make that

25  determination.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MR. HURTADO:  Yes, sir.

2           THE COURT:  Sustained.

3    BY MR. HURTADO:

4        Q.   Agent, let's move on to the second phone

5    call.  Okay, that's under tab 2 of the same binder

6    that I just handed you.

7        A.   Okay.

8        Q.   And before I play that call, I just want to

9    make clear, you've never spoken by phone with

10   Mr. Leal; correct?

11       A.   That's correct.

12       Q.   But over the course of the investigation,

13   have you come to be familiar with his voice?

14       A.   Yes, sir.

15       Q.   How certain are you that his voice appeared

16   in that first phone call?

17       A.   One hundred percent certain.

18       Q.   All right.  Now, I'm going to play the

19   second phone call.

20           (Tape played.)

21       Q.   You heard that call; is that correct?

22       A.   Yes, sir.

23       Q.   Is this person, Jose Casias, the same

24   person that was referenced in the first call that we

25   heard?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Yes.

2      Q.   And by the way, Agent, I want to direct

3  your attention to page 9, line 8.  As I mentioned

4  before, this is a little embarrassing but the

5  transcript is not 100 percent accurate.  The line --

6  excuse me.  Line 8 reads as follows.  It says,

7  "Kathryn told me."  Could it mean that that line is

8  actually supposed to read, "Gaspar told me"?

9      A.   Yes.

10     Q.   And you heard that call before?

11     A.   Yes.

12     Q.   And Gaspar -- is that referring to the

13  defendant in this case?

14     A.   Gaspar Leal.

15     Q.   Can you summarize briefly what's going on

16  in this call?

17     A.   Jose Casias is trying to contact somebody

18  via Facebook.

19         MR. BOWLES:  Your Honor, I'm going to

20  object.  This call speaks for itself.

21         THE COURT:  Let's let the call speak for

22  itself.  I don't think we need him to give his

23  interpretation of it.  The jury can do that.

24         MR. HURTADO:  Yes, sir.

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    BY MR. HURTADO:

2         Q.   Very well.  In that case, Agent, I'm going

3    to proceed to the third and final call.  This one is

4    approximately 13 minutes and 20 seconds.

5         A.   Okay.

6              (Tape played).

7    BY MR. HURTADO:

8         Q.   Agent, you just heard that call?

9         A.   Yes.

10        Q.   There is a reference to a man named Luis.

11   Do you know who that is?  Would that be the

12   confidential informant?

13        A.   Correct.

14        Q.   There are two Luises; is that correct?  One

15   is Luis Arreola-Palma, whom Mr. Bowles referenced

16   earlier; and Luis, the confidential informant

17   himself?

18        A.   Yes, sir.

19        Q.   I won't ask you to summarize.  That's up to

20   the jury.  But I want to direct your attention to

21   page 20, specifically the first three lines.  Earlier

22   you testified -- I think it was on my direct exam --

23   that Gaspar Leal provided Daniel Carmona's phone

24   number to the confidential informant for the purpose

25   of setting up a drug deal.  Do you remember that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          A.   Yes, sir.

2          Q.   Okay.  Is this phone call, specifically the

3     first three lines on page 20, the basis for your

4     testimony here today?

5          A.   That's correct.

6          Q.   I am going to go over these calls in a

7     little more detail with another agent, not with you.

8     But for now, this concludes my direct examination.

9     Thank you.

10              THE COURT:  Thank you, Mr. Hurtado.

11              Mr. Bowles, do you have further recross?

12              MR. BOWLES:  Yes, Your Honor.  Thank you.

13              THE COURT:  Mr. Bowles.

14                      RECROSS-EXAMINATION

15     BY MR. BOWLES:

16          Q.   Agent, in call 1, that was the really short

17     call, it looks like Gaspar Leal gives the

18     confidential informant the name of Jose.  Is that the

19     import of that call on page 43 at lines 16 through

20     18?  "Call Jose"; is that right?

21          A.   Yes, sir.

22          Q.   And then I want to direct you to the second

23     call, and that's at tab 2.  And I'm going to direct

24     you to page 10.  And on page 10, lines 14 through 17,

25     do you see where Jose Casias says, "This is what I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    do, homie, I push weed"?  Do you see that, sir?

2        A.    Yes.

3        Q.    And weed is marijuana; correct?

4        A.    Correct.

5        Q.    Then later on it says, lines 18 through 20,

6    "I don't push the chronic.  I push the swag."  What

7    is "chronic"?

8        A.    It's my understanding that's a high-grade

9    marijuana.

10        Q.    And then what is swag?

11        A.    I think it's lower-grade marijuana.

12        Q.    Then he's talking about pushing marijuana;

13    correct?

14        A.    Yes, sir.

15        Q.    And then later on in the call, Jose Casias

16    and the CHS, which are talking -- the CHS is the

17    confidential informant; is that right?

18        A.    That's right.

19        Q.    Now, when they are talking further on the

20    call, page 11, they mention Jose Casias, says on line

21    18, "You pushed the black.  You'd be selling black

22    Jordans."  What does that mean?

23        A.    That's slang for black tar heroin or

24    heroin.

25        Q.    So he's telling the confidential informant

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that he would be selling that, that the confidential

2    informant sold that, he thought?  Is that what

3    that --

4         A.   That's correct.

5         Q.   To your knowledge, was the confidential

6    informant selling black tar heroin?

7         A.   No, sir.

8         Q.   Okay.  So later on in the call, the CHS,

9    which is the confidential informant, he says on page

10   13, lines 19 through 20, "Usually I get two zippers."

11   Do you see that?

12        A.   Yes, sir.

13        Q.   And that's the confidential informant, sir,

14   telling Jose Casias that he gets two zippers; right?

15        A.   Correct.

16        Q.   Now, two zippers.  What is two zippers?

17        A.   It's another street vernacular term to

18   refer to two ounces.

19        Q.   Two ounces of narcotics?

20        A.   Correct.  And in this instance, they're

21   referring to crystal methamphetamine.

22        Q.   And again, that's involving Jose Casias.

23   And the confidential informant brought that up, the

24   two zippers.

25        A.   Correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1     Q.   Okay.  And finally, I want to take you to

2  call 3, and that's at tab 3.  And again, on page 17

3  we see the name Luis Arreola-Palma introduced.  And

4  he does a lot of talking with the CS.  Again, we

5  talked about him earlier.  Is that the same Luis

6  Arreola-Palma?

7     A.   Yes.

8     Q.   Okay.  He was the one incarcerated with

9  Gaspar Leal; correct?

10     A.   That's correct.

11     Q.   So on these calls, do you know if they're

12  literally standing by each other in the same cell or

13  same call area?

14     A.   Sounds like they're standing next to each

15  other.

16     Q.   Now, these calls.  Are they on a Securus

17  system?

18     A.   Yes.

19     Q.   And a Securus system is a jail system,

20  correct, that is recorded?

21     A.   Correct.

22     Q.   So these recorded calls, you said the

23  confidential informant records them, but the jail

24  also records them?

25     A.   That is correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   Inmates are told when they make calls on

2    Securus that those are going to be recorded; correct?

3    A.   That's usually part of the preamble that

4    tells them that the calls are recorded.

5    Q.   Okay.  So those can be recorded and they

6    can later be retrieved and listened to.

7    A.   Yes, sir.

8    Q.   Now, as you go along through this call 3,

9    you see the name Jose Casias also, and I'm going to

10   direct you, for example, to page 20.  So what is

11   going on here?  It looks like at least a three-way

12   call.

13   A.   Yes.

14   Q.   So you've got Gaspar Leal interspersing

15   every once in a while.  He's in the jail; right?

16   A.   Correct.

17   Q.   And Luis Arreola-Palma is in the jail?

18   A.   Correct.

19   Q.   And then Jose Casias is on a cellphone

20   somewhere; is that right?

21   A.   Yes.

22   Q.   And then the confidential informant is on

23   his cellphone?

24   A.   Correct.

25   Q.   And are those two in separate places?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     A.   The informant and Mr. Casias are in
2 separate places.
3     Q.   Then I think towards the end of that call,
4 there is yet other references on page 25 to
5 unidentified male.  Do you have any idea who that
6 person is?  There's a whole string of unidentified
7 male references.
8     A.   I believe that is Luis Arreola speaking.
9     Q.   Okay.  And one more thing on this call.
10 Mr. Leal is talking about -- and he's in jail, he's
11 going to get out in seven months.  I know that you
12 had said you witnessed the meeting at his apartment.
13 Was that apartment here in Albuquerque, that initial
14 meeting with the confidential informant?
15     A.   I helped cover that meet, yes.
16     Q.   That apartment -- do you know what area of
17 town that was in?
18     A.   No, I don't recall.  I believe it was on
19 Iron Street, I believe.
20     Q.   A small apartment or just --
21     A.   It was a smaller apartment.  It was
22 actually in an apartment complex, a multiunit
23 building.
24     Q.   I have nothing further, Your Honor.
25          THE COURT:  Thank you, Mr. Bowles.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Any redirect, Mr. Hurtado?

2          MR. HURTADO:  Briefly, Your Honor.

3          THE COURT:  I need to give Ms. Bean a

4    break.  So if it is brief, go ahead.

5                    REDIRECT EXAMINATION

6    BY MR. HURTADO:

7          Q.   Agent Ramos, I want to make reference to

8    some of the language that is used.  For example, Mr.

9    Bowles pointed out that Jose Casias makes reference

10   to, quote, "two zippers."  Do you remember that?

11         A.   Yes, sir.

12         Q.   So I think you stated two zippers are 2

13   ounces of methamphetamine?

14         A.   Correct.

15         Q.   So 1 ounce would be one zipper; is that

16   correct?

17         A.   That's correct.

18         Q.   Do you know why drug traffickers use coded

19   language?  For example, why not just say, "I would

20   like to buy 2 ounces of your finest supply of crystal

21   methamphetamine"?

22         A.   Because they are warned that law

23   enforcement might be monitoring the phone call.

24         Q.   And just to clarify one other point.  This

25   investigation took place in Albuquerque, County of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Bernalillo, state of New Mexico; correct?

2        A.    Correct.

3              MR. HURTADO:  Your Honor, nothing further.

4              THE COURT:  Thank you, Mr. Hurtado.

5              Anything else, Mr. Bowles?

6              MR. BOWLES:  No, thank you, Your Honor.

7              THE COURT:  All right.  Mr. Ramos, you may

8    step down.

9              THE WITNESS:  Thank you, Your Honor.

10             THE COURT:  All right.  We're going to take

11   our first break during the Government's presentation

12   of its evidence, so I'm going to remind you of a few

13   things that are especially important.  Until the

14   trial is completed, you're not to discuss this case

15   with anyone, whether it's members of your family,

16   people involved in the trial, or anyone else.  And

17   that includes your fellow jurors.  If anyone

18   approaches you and tries to discuss the trial with

19   you, please let me know about it immediately.

20             Also, you must not read or listen to any

21   news reports of the trial.  Don't get on the internet

22   and do any research for purposes of this case.  And

23   finally, remember that you must not talk about

24   anything with any person who is involved in the

25   trial, even if it doesn't have anything to do with



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   the trial.

2          If you need to speak with me, simply give a

3   note to one of the court security officers.

4   Depending on how fast we move this afternoon, I'll

5   try not to repeat these every time we take a break.

6   But do keep them in mind each time we do take a

7   break.

8          All right.  We'll be in recess for about 15

9   minutes, and then we'll resume the Government's case.

10          All rise.

11          (The jury left the courtroom.)

12          THE COURT:  All right.  Anything we need to

13   take up before we take our break?  Mr. Hurtado,

14   Mr. Cairns?

15          MR. HURTADO:  No, sir, thank you.

16          THE COURT:  Mr. Bowles?

17          MR. BOWLES:  No, Your Honor.

18          THE COURT:  All right.  We'll be in recess

19   for about 15 minutes.

20          (The Court stood in recess.)

21          THE COURT:  All right.  We'll go back on

22   the record.  Anything we need to discuss before we

23   bring the jury in?  Anything else I can do for you,

24   Mr. Hurtado?

25          MR. HURTADO:  No, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           THE COURT:  Mr. Cairns?

2           MR. CAIRNS:  No, Your Honor.

3           THE COURT:  How about you, Mr. Bowles?

4           MR. BOWLES:  No, Your Honor.

5           (The jury entered the courtroom.)

6           THE COURT:  All right, Mr. Hurtado, does

7    the Government have its next witness or evidence?

8           MR. HURTADO:  Yes, sir, it does.  The

9    United States would call Confidential Informant.

10          THE COURT:  All right.  Confidential

11   Informant, if you'll come up and stand next to the

12   witness box on my right, your left, before you're

13   seated, my courtroom deputy, Ms. Bevel, will swear

14   you in.

15                  CONFIDENTIAL INFORMANT,

16       after having been first duly sworn under oath,

17       was questioned, and testified as follows:

18          THE COURT:  All right.  Mr. Confidential

19   Informant.  Mr. Hurtado.

20          MR. HURTADO:  Yes, sir.

21                  DIRECT EXAMINATION

22   BY MR. HURTADO:

23       Q.   Sir, I'm not going to ask you to state your

24   real name for the record.  Given the nature of the

25   work you do, we're trying to limit any reference to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   your real name.

2          When I ask you a question, if you don't

3   understand the question, just feel free to ask me to

4   rephrase that question.  Do you understand so far?

5          A.   Yes.

6          Q.   Throughout my questioning of you, I'm going

7   to refer to you as confidential informant.  Do you

8   understand so far?

9          A.   Yes.

10         Q.   So I want the members of the jury to know a

11  little bit about you.  Can you tell the jury where

12  you're from?

13         A.   Chicago, Illinois.

14         Q.   And what I want you to do is:  Look at the

15  jury when you're giving an answer.  You're from

16  Chicago, Illinois?

17         A.   Yes.

18         Q.   Can you tell us how old you are?

19         A.   41.

20         Q.   41.  Can you tell the members of the jury

21  what you do for a living?

22         A.   I work for ATF.

23         Q.   You work for the ATF.  What do you do for

24  the ATF?

25         A.   I buy narcotics off the streets from

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  individuals and guns and stuff like that.

2      Q.  In other words, you work as a confidential

3  informant.  Okay.  How long have you worked for the

4  ATF?

5      A.  Six, seven years, give or take.

6      Q.  If I told you it was approximately since

7  2012, would that appear correct to you?

8      A.  Yes.

9      Q.  In what parts of the country have you

10 worked as a confidential informant for the ATF?

11     A.  Chicago, Dallas, South Carolina, Milwaukee,

12 St. Louis, Baltimore, New Mexico, El Paso, Denver.

13 That's about it.

14     Q.  About it.  Sounds like you travel a lot in

15 connection with your work with the ATF?

16     A.  Yes.

17     Q.  Can you tell the members of the jury why

18 you work as a confidential informant?  For example,

19 why not go work at a fast food restaurant or doing

20 construction?  What is it about being a confidential

21 informant?

22     A.  I'm good at what I do.

23     Q.  Try to speak into the microphone.

24         Do you get paid money in exchange for your

25 work as a confidential informant?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.    Yes.

2      Q.    What is your payment as a confidential

3 informant contingent on?  In other words, what do you

4 have to do to make money with the ATF?

5      A.    Put deals on the table.

6      Q.    Put deals on the table.  And when you say

7 "deals," do you mean like drug deals?

8      A.    Yes.

9      Q.    And how do you go about making arrangements

10 for drug deals?  In other words, how do you find drug

11 deals?  What do you do?

12      A.    I look for individuals on the streets that

13 might fit the criteria as a bad guy.

14      Q.    I'm sorry, could you repeat the last part?

15      A.    Fit the criteria as a bad guy.

16      Q.    They fit the criteria.  Is that what you

17 said?

18      A.    Yes.

19      Q.    And when you say you go looking for people

20 who fit the criteria, do you go on foot?  Do you go

21 online?  Do you drive around in a car?  How do you go

22 about developing these drug deals?

23      A.    I drive around in a car.

24      Q.    Drive around in a car?

25      A.    Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Is the ATF aware of what you do?

2      A.   Yes.

3      Q.   Are you required to report to the ATF when

4 you go out and look for people who, quote, "fit the

5 criteria" that you just talked about?

6      A.   Yes.

7      Q.   I want to direct your attention slightly to

8 the summer of 2016.  Do you remember which agents in

9 particular you would report to in 2016?

10     A.   Mike Ramos.

11     Q.   And who is Mike Ramos?

12     A.   ATF agent.

13     Q.   He's an ATF agent?

14     A.   Yes.

15     Q.   Is he in this courtroom right now?

16     A.   Yes.

17     Q.   Why did you report to ATF Agent Ramos as

18 opposed to another agent?

19     A.   Because I'm assigned to him.

20     Q.   You're assigned to him.  So as a

21 confidential informant, you're required to report to

22 just one agent?

23     A.   Yes.

24     Q.   How long have you been working with Agent

25 Ramos?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      A.   Since 2012.

2      Q.   2012.  So basically since you started with

3  the ATF?

4      A.   Yes.

5      Q.   Does Agent Ramos pay you?  Is he the agent

6  responsible for paying you for your drug deals?

7      A.   Yes.

8      Q.   Why should this jury believe anything you

9  have to say in connection to the case that we're

10  about to discuss?

11      A.   Because everything I do is recorded on

12  audio and video.

13      Q.   Does Agent Ramos also watch over you?

14      A.   Yes.

15      Q.   Do you remember the investigation that took

16  place back in 2016 and in the summer here in

17  Albuquerque, county of Bernalillo, and state of New

18  Mexico?

19      A.   Yes.

20      Q.   During that timeframe, do you remember

21  having met in the summer of 2016 a man named Gaspar

22  Leal?

23      A.   Yes.

24      Q.   What I'd like to have you do right now,

25  Confidential Informant, is stand up and tell me this:

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Is Gaspar Leal sitting in this courtroom right now?

2        A.   Yes.

3        Q.   Could you please identify him for the

4    record?

5        A.   To my left with a white shirt.

6        Q.   Wearing the white shirt?

7        A.   Yes.

8        Q.   Is he wearing anything else?

9        A.   And a tie.

10           MR. HURTADO:  Your Honor, may the record

11   reflect that the confidential informant has

12   identified the defendant, Mr. Leal, for the record?

13       Q.   You may sit down, sir.

14           THE COURT:  The record will so reflect.

15       Q.   Can you tell the members of the jury very

16   briefly how you came to have contact with the

17   defendant, Mr. Leal?

18       A.   His number was passed to me by an ATF agent

19   that he was giving haircuts and he was passing

20   flyers.  So he told me to call his number, and I

21   reached out to him.

22       Q.   So when you say he gave you --

23       A.   ATF agent.

24       Q.   Was it Agent Ramos?

25       A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   I think it might help if you address Agent

2  Ramos by name.  That way, when you say words like

3  "he" or "she," we'll know who you're talking about.

4  Does that make sense?

5     A.   Yes.

6     Q.   So let me flesh out a little bit more

7  information.  So are you saying that Agent Ramos

8  obtained for you Mr. Leal's phone number?

9     A.   Yes.

10     Q.   And did he tell you anything about

11  Mr. Leal?  For example, did he just say, "Hey, call

12  this phone number"?

13     A.   No, he told me to call him and see about

14  haircuts --

15          MR. BOWLES:  Objection.

16          THE COURT:  Hold on.

17          MR. HURTADO:  Stand by for a second.

18          THE COURT:  Are you trying to elicit what

19  was said to him?

20          MR. HURTADO:  Although the United States

21  would say it's not being offered for the truth of the

22  matter asserted, I'm trying to elicit testimony that

23  would go to the state of mind, for example, why he

24  called Mr. Leal.  It's not being offered for the

25  truth.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Well, I can give a limiting

2    instruction or -- is that sufficient?

3          MR. BOWLES:  Well, I would ask state of

4    mind.  He called because he was given a card and told

5    to call.  I don't know why we need further

6    explanation.

7          THE COURT:  I'm not sure we do, either.

8          MR. HURTADO:  I agree.  That's all I was

9    looking for.

10          THE COURT:  Why don't you lead him, get the

11   information out, and stop there.

12   BY MR. HURTADO:

13     Q.   So now I want to move on, and I want you to

14   make sure you listen carefully to my questions.  When

15   you called the defendant, were you actually able to

16   speak with him?

17     A.   Yes.

18     Q.   Did you actually make an appointment for a

19   haircut?

20     A.   Yes.

21     Q.   And when was this; do you remember?

22     A.   May '16.  May, 2016.

23     Q.   Did you ever have occasion to go to the

24   defendant's apartment?

25     A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & Associates, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      Q.   Why did you go to his apartment?

2      A.   To get a haircut.

3      Q.   Was that also in May of 2016?

4      A.   Yes.

5      Q.   Did your -- let me withdraw that.  Did you

6   continue speaking with the defendant in July of 2016?

7      A.   Yes.

8      Q.   In July of 2016, did you discuss drugs with

9   the defendant, Mr. Leal?

10     A.   Yes.

11     Q.   In July of 2016 did Mr. Leal call you?

12     A.   Yes.

13     Q.   From where did he call you?

14     A.   From jail.

15     Q.   From jail.  When he called you from jail,

16  where were you?

17     A.   I was out in New Mexico.

18     Q.   Out in New Mexico.  Roaming the streets?

19     A.   Yes.

20     Q.   Let me ask you this.  Did you answer the

21  phone when he called?

22     A.   Yes.

23     Q.   Did you know it was him?

24     A.   Yes.

25     Q.   How do you know it was him?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1        A.    He said his name at the recording from

2    every call.

3        Q.    When you spoke with Mr. Leal, were you able

4    to recognize his voice?

5        A.    Yes.

6        Q.    How can you be so sure that the voice that

7    you heard on those phone calls was that of Mr. Leal

8    as opposed to somebody else?

9        A.    He has a distinguished voice.

10       Q.    A distinguished voice?

11       A.    Yes.

12       Q.    It was familiar to you?

13       A.    Yes.

14       Q.    When you spoke to Mr. Leal, what did you

15   and he discuss?

16       A.    Narcotics.

17            MR. BOWLES:  Your Honor, I'm going to

18   object again.  The calls speak for themselves.  We're

19   talking about the calls that have been played in

20   court.

21            MR. HURTADO:  Your Honor, this is his

22   direct testimony about his involvement with the

23   defendant.  Any statements that the defendant has

24   made are an admission by a party opponent and

25   therefore admissible.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Well, I don't think it's a

2    hearsay objection.  But we've heard the statement so

3    he's not going to be as good as a recording.  So what

4    are we trying to do?

5          MR. HURTADO:  Your Honor, I'm just trying

6    to flesh out --

7          THE COURT:  I'm a little bit concerned that

8    we're going to deviate from the recordings here, and

9    we've got that in evidence.

10          MR. HURTADO:  With that said, I think I can

11    accommodate the Court and Mr. Bowles' concerns by

12    playing the recordings.

13    BY MR. HURTADO:

14      Q.    So Confidential Informant, what I'm going

15    to do at this time is, I'm going to play the phone

16    calls that you had with the defendant, Mr. Leal.  Do

17    you understand so far?

18      A.    Yes.

19      Q.    What I'm going to do is, I'm going to play

20    certain segments of those phone calls, and I'm going

21    to pause the recordings periodically and have you

22    explain what's going on in those recordings.  Does

23    that make sense?

24      A.    Yes.

25      Q.    So I'm going to play the first call.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          (Tape played.)

2     Q.   Now, Confidential Informant, that call was

3  so short, I just played that one straight through

4  instead of pausing it periodically like I said I was

5  going to.  Let me ask you about this phone call that

6  you had.  First of all, whose voice appears on that?

7     A.   Casper.

8     Q.   Gaspar?

9     A.   Yes.

10    Q.   Just to clarify one thing, are you calling

11 him Casper or Gaspar with a G?

12    A.   With a K.  I mean, I thought it was Casper,

13 not Gaspar.

14    Q.   So you thought his name was Casper as

15 opposed to Gaspar?

16    A.   Yes.

17    Q.   Now, in that phone call, and as you may

18 recall, Gaspar makes reference to a man named Jose.

19 Did you come to learn who Jose was?

20    A.   At the moment, no.

21    Q.   At the moment, no?  Did you even know what

22 was going on at this point?

23    A.   The call was so fast.  He was just trying

24 to -- he was reaching out to me for --

25         MR. BOWLES:  Your Honor, I object to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    speculation again.  He said he didn't know.

2              THE COURT:  Well, sustained.

3    BY MR. HURTADO:

4         Q.   So let's move on.  That was the first call.

5    Now I'm going to move on to the second call.  This

6    one is a little bit longer.  It's about four minutes

7    and 57 seconds.  This one I will stop periodically.

8              Just one thing Mr. Bowles brought up.  If

9    you don't know the answer to a question, just say, "I

10   don't know."

11             (Tape played.)

12        Q.   Now, I've already paused it.  That sounds

13   like your voice; is that correct?

14        A.   Yes.

15        Q.   And do you know who you're calling at this

16   point, or not quite yet?

17        A.   Yes.

18        Q.   You do?  Who are you speaking with?

19        A.   Jose.

20        Q.   Is it the same Jose from the first call?

21        A.   Yes.

22        Q.   How were you able to make contact with

23   Jose?

24        A.   By the number that Gaspar gave me.

25        Q.   By this point, when you're making this

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 820-6349                                   FAX (505) 843-9492
                                                    1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1    phone call to Jose, do you know why you're making

2    that call?

3           A.   Yes.

4           Q.   Why?

5           A.   For drugs.

6           Q.   For drugs?

7           A.   Yes.

8           Q.   And can you elaborate just a little bit.

9    When you say it's for drugs, does that mean that you

10   want to buy drugs from Jose, or sell them to Jose?

11          A.   Buy.

12          Q.   Buy?

13          A.   Yes.

14          Q.   How can you be so sure?

15          A.   Because he was giving me the number to

16   reach out to him.

17          Q.   When you say "he," do you mean Mr. Leal,

18   the defendant?

19          A.   Yes, yes.

20          Q.   And speaking of Mr. Leal, did you ever use

21   any type of threats or force to get Mr. Leal to call

22   you?

23          A.   No.

24          Q.   Who initiated the phone calls between

25   yourself and Mr. Leal?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   What?

2      Q.   Who was the person who made the phone call

3   first?  Was it Mr. Leal making the phone call to you,

4   or was it you making the phone call to Mr. Leal?

5      A.   Him to me.

6      Q.   Was it usually that way, or always, or

7   sometimes?

8      A.   Always.

9      Q.   Always.  And let me ask you, when you spoke

10  with him, did he ever appear to be confused or not

11  know what was going on?

12     A.   No.

13     Q.   If the defendant, Mr. Leal, ever said to

14  you to leave him alone, to go away, or that he didn't

15  deal drugs, what would you have done in that

16  instance?

17     A.   I'd have walked away.

18     Q.   And if you would have walked away, would

19  you have tried to pursue other suspects?

20     A.   Yes.

21     Q.   Did Agent Ramos, your handler, know that

22  Gaspar Leal, the defendant, was trying to call you?

23     A.   Yes.

24     Q.   Did he authorize you to continue having

25  contact with Mr. Leal?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Yes.

2      Q.   So I'm going to continue with this call.

3          (Tape played.)

4      Q.   So I've already paused it.  Mr. Casias, or

5  Jose, as you know him, he's talking about 100 bucks,

6  or money.  Do you know what he's talking about at

7  this point?

8      A.   Some food stamps.

9      Q.   Food stamps?

10     A.   Yes.

11     Q.   And just to clarify one point, you have

12  never met this person, Jose, before this time; is

13  that correct?

14     A.   No.

15     Q.   And you also never knew Mr. Leal before

16  this investigation; correct?

17     A.   No.

18     Q.   You had no personal connection to Mr. Leal

19  at all?

20     A.   No.

21     Q.   Is that correct?

22     A.   Yes.

23         (Tape played.)

24     Q.   Were you able to listen to that segment of

25  the call?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           A.   Yes.

2           Q.   It sounds like this is your first phone

3   conversation with Jose.   Is that accurate?

4           A.   Yes.

5           Q.   And can you tell me what's going on here?

6   Are you guys trying to find out what's going on and

7   who each other is or --

8           A.   Yes.

9                (Tape played.)

10          Q.   When Jose says that he pushes weed, what

11   does that refer to?

12          A.   Marijuana.

13          Q.   Were you looking for marijuana?

14          A.   No.

15          Q.   What were you looking for?

16          A.   Crystal meth or heroin.

17          Q.   Why is Jose talking about marijuana when

18   what you're looking for is crystal methamphetamines?

19          A.   I don't know.

20               (Tape played.)

21          Q.   All right.   So I paused it again.   Jose

22   makes reference to a girl, a woman named Crystal.

23   Did you hear that?

24          A.   Yes.

25          Q.   And it sounded like you didn't know who

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Crystal was, and you asked, "Who is Crystal?"  So

2    what's going on here?

3         A.   It didn't click at me at the moment.

4         Q.   When you say it didn't click on you, do you

5    mean you didn't understand what was going on?

6         A.   Yes.

7         Q.   But what did you understand that to mean?

8         A.   Crystal meth.

9         Q.   Crystal meth?

10        A.   Yes.

11        Q.   So is Jose trying to use coded language to

12   communicate with you?

13        A.   Yes.

14        Q.   In your experience as a confidential

15   informant, is it common for drug dealers to use coded

16   language during phone calls?

17        A.   Yes.

18        Q.   Why?

19        A.   Because calls might be tapped or be

20   listened to.  You just never know.

21        Q.   So you want to avoid the police listening

22   in?

23        A.   Yes.

24        Q.   If you were to call up a person who you

25   believe was a drug dealer and you said something

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    like, "Hello, I would like to order your finest

2    supply of crystal methamphetamine," what do you think

3    would happen in that instance?

4         A.   They'd hang up on me.

5         Q.   They'd hang up on you?

6         A.   Yeah.

7         Q.   Is that something you've ever done

8    throughout your time as a confidential informant?

9         A.   Yes.

10        Q.   And the person has hung up on you?

11        A.   Yes.

12        Q.   Let's continue with the call.

13             (Tape played.)

14        Q.   All right.  So I paused it once again.

15   Jose, this time, is making reference to black

16   Jordans.  Selling black Jordans.  Do you know what

17   that means?

18        A.   Yes, heroin.

19        Q.   Heroin.  Now, Jose keeps making reference

20   to "he," so for example, he says, "He told me

21   something about that you pushed black, that you'd be

22   selling black Jordans."

23             What makes Jose think that you are selling

24   heroin?

25        A.   Because I'm buying narcotics off the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    streets, they think I'm a seller.

2         Q.   And when Jose says, "He told me something

3    about that you pushed the black," who is "he"?

4              MR. BOWLES:  Object to speculation.  Lack

5    of foundation.

6              MR. HURTADO:  He should be allowed to

7    answer if he knows, Your Honor.

8              THE COURT:  Well, hold on a second.  I'm

9    going to sustain that one.

10             (Tape played.)

11   BY MR. HURTADO:

12        Q.   Now, on that call, Confidential Informant,

13   you say, "Could you hook me up with it or something?"

14   Do you recall hearing that?

15        A.   Yes.

16        Q.   Do you remember what it was you were

17   talking about?

18        A.   Yes.

19        Q.   And what is that?

20        A.   Weapons.

21        Q.   Let's move on to the remainder of the call.

22             (Tape played.)

23        Q.   All right.  So I paused it again and it

24   sounds like you have just requested what are called

25   two zippers.  Did you hear that part?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.    Yes.

2      Q.    Can you tell us what a zipper is?

3      A.    An ounce.

4      Q.    So would two zippers be 2 ounces?

5      A.    Yes.

6      Q.    In your experience as a confidential

7   informant, is the word "zipper" a common word for

8   methamphetamine, 1 ounce?

9      A.    Or others.

10     Q.    Or what -- you were going to say something

11  else.

12     A.    Heroin, cocaine.

13     Q.    So a zipper is just an ounce, and it could

14  be an ounce for any different type of drug?

15     A.    Yes.

16     Q.    So it could be an ounce of heroin?

17     A.    Yes.

18     Q.    An ounce of meth?

19     A.    Yes.

20     Q.    Ounce of cocaine?

21     A.    Yes.

22           (Tape played.)

23     Q.    Now, on that instance, Jose makes reference

24  to trying to get ahold of a girl on Facebook.  Do you

25  know what's going on there?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     A.   He's trying to direct me to an individual

2   that might help me out.

3     Q.   In other words, by "help you out," you mean

4   sell you drugs?

5     A.   Yes.

6          (Tape played.)

7     Q.   Now, Confidential Informant, the call ends

8   there.  What ended up happening with Jose?  In other

9   words, did you ever end up buying any drugs from

10  Jose?

11    A.   No.

12    Q.   And why did that not materialize?  Why did

13  that not come through?

14    A.   They never got ahold of people, I guess.

15    Q.   Did Mr. Leal end up calling you again?

16    A.   Yes.

17    Q.   And why did he call you again?

18         MR. BOWLES:  Objection, speculation.

19         THE COURT:  Sustained.

20  BY MR. HURTADO:

21    Q.   Was there another phone call with Mr. Leal?

22    A.   Yes.

23    Q.   Did you speak with Mr. Leal?

24    A.   Yes.

25    Q.   Was he calling you?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.   Yes.

2        Q.   I'm going to play the third call.  This one

3    is dated July 24.  This one is a little bit longer,

4    at 13 minutes, 20 seconds.

5             (Tape played.)

6        Q.   So I paused it already.  Can you identify

7    the voices for the jury that appear in that call so

8    far?

9        A.   Yes.

10       Q.   Please tell us who they are.

11       A.   Gaspar.

12       Q.   Anybody else?  Does Jose appear to be on

13   that phone?

14       A.   Yes, later.

15       Q.   Gaspar mentions a name.  He says, "Hey,

16   Luis."  Is that you?

17       A.   Yes.

18       Q.   Is that your real name?

19       A.   Yes.

20            (Tape played.)

21       Q.   So in that segment, defendant Leal is

22   making reference to his primo?

23       A.   Yes.

24       Q.   Do you know who that is?

25       A.   Cousin.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       Q.   Who is his cousin?  Do you know a name?  Do

2   you know who that is?

3       A.   (Witness shakes head.)

4       Q.   That's fine.  How about Toque?  There is a

5   reference to somebody named Toque.  Do you know who

6   that individual is?

7       A.   An individual that was incarcerated with

8   him.

9            (Tape played.)

10      Q.   I'm going to pause the call there because

11  there is a big segment in Spanish, so I'm going to

12  fast-forward through that.

13           (Tape played.)

14      Q.   Now, I paused it again.  It sounds like

15  Toque, this guy you know as -- or Luis, this person

16  you know as Toque, says something about the one

17  that's for, for, for Gaspar.  Do you remember hearing

18  that?

19      A.   Yes.

20      Q.   Do you know what that is in reference to?

21      A.   No.

22      Q.   All right.

23           (Tape played.)

24      Q.   I'll pause it right there.  The defendant

25  gives you a phone number.  Did you hear that part?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1     A.   Yes.

2     Q.   Did you ever come to learn whose phone

3  number that was?

4     A.   Yes.

5     Q.   Whose phone number was that?

6     A.   Daniel.  I know him as Primo.

7     Q.   You know him as Primo?

8     A.   Yes.

9     Q.   Did you ever come to learn Primo's real

10  name?

11     A.   Yes.

12     Q.   And what is his real name?

13     A.   Daniel.

14     Q.   Does he have a last name?

15     A.   I don't know.

16     Q.   That's fine.  And why is Mr. Leal giving

17  you that phone number?

18        MR. BOWLES:  Object to speculation, Your

19  Honor.

20        THE COURT:  Well, sustained.

21  BY MR. HURTADO:

22     Q.   What did you do with that phone number,

23  Confidential Informant?

24     A.   I called it.

25     Q.   You called it?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1       A.   Yes.

 2       Q.   And why did you call it?

 3       A.   To buy drugs off him.

 4       Q.   To buy drugs?

 5            I'm going to continue with the call.

 6            (Tape played.)

 7       Q.   So answer this only if you know.  Jose

 8  makes reference to trying to make a four-way call.

 9  Do you know who is going to be involved in that

10  four-way call?

11       A.   Daniel.

12       Q.   Daniel?

13       A.   Yes.

14       Q.   Anybody else?  Is Gaspar a part of that

15  call?

16       A.   Yes.

17       Q.   Is Luis Arreola-Palma a part of that call?

18       A.   Yes.

19       Q.   And are you a part of that call?

20       A.   Yes.

21            (Tape played.)

22       Q.   All right.  In that segment, Mr. Leal, the

23  defendant, says, "Just keep on trying, then."

24            Only if you know the answer, do you know

25  what Mr. Leal is trying to get you to do?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MR. BOWLES:  Again, Your Honor, I'm going

2      to object.

3           THE COURT:  Well, I think he can explain

4      what he did.  But I guess he can say what his

5      understanding was that he understood Mr. Leal to want

6      him to do.  So if you phrase it that way, his

7      understanding, I'll allow him to testify.

8           MR. HURTADO:  Yes, sir.

9      BY MR. HURTADO:

10          Q.   Confidential Informant, what was your

11     understanding of what Mr. Leal, the defendant, wanted

12     you to do?

13          A.   To reach out to Daniel and buy narcotics

14     off him.

15          Q.   The rest of the call I won't play, but I

16     want to touch base on a few more things before I

17     conclude my direct exam of you.

18               First of all, do you know who I am?

19          A.   Yes.

20          Q.   Have you ever met me before?

21          A.   Yes.

22          Q.   What is my name?

23          A.   Sammy.

24          Q.   Where have you and I met before?

25          A.   At your office, state attorney.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   And why did we meet there?

2     A.   To prep me.

3     Q.   To prep you?

4     A.   Yes.

5     Q.   To prep you for this trial?

6     A.   Yes.

7     Q.   Okay.  Were you paid any money by the ATF

8  to be here today for this trial?

9     A.   Today as in --

10    Q.   So --

11    A.   For my expenses being here.

12    Q.   Yes, for the purposes of being here.

13    A.   Yes.

14    Q.   Can you tell the members of the jury how

15 much that was, to your knowledge?

16    A.   600.

17    Q.   $600?

18    A.   Yes.

19    Q.   And is it common practice for the ATF to

20 pay you for work-related expenses like travel?

21    A.   Yes.

22    Q.   The $600 that you received -- what do you

23 spend that on, when you're making work-related travel

24 arrangements like this?

25    A.   Bills, expenses, just my -- money for my

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    kids.

2         Q.    Do you get set up with a hotel by the ATF?

3         A.    Yes.

4         Q.    Do you get reimbursed for mileage, like on

5    your car?  You said you drove --

6         A.    Sometimes.

7         Q.    Sometimes?

8         A.    Yes.

9         Q.    Food?

10        A.    It comes out of my pocket.

11        Q.    Food comes out of your pocket.  Are you

12   directed by the ATF to testify a certain way because

13   they're paying you?

14        A.    No.

15        Q.    Okay.  Have I told you to testify a certain

16   way?

17        A.    No.

18        Q.    You indicated before that you've been

19   working with the ATF since, I think, 2012; is that

20   correct?

21        A.    Yes.

22        Q.    You've been paid money in exchange for your

23   services.

24        A.    Yes.

25        Q.    Do you own any big mansions?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        A.    No.

2        Q.    Do you own expensive cars?

3        A.    No.

4        Q.    Do you wear designer clothes?

5        A.    No.

6        Q.    Fancy jewelry?

7        A.    No.

8        Q.    So what do you spend all this money that

9   you earn from the ATF?

10       A.    Expenses, going out eating, bills, sending

11  money home.

12       Q.    Do you remember back in 2015 you were

13  charged with driving on a suspended or a revoked

14  license?

15       A.    Yes.

16       Q.    Did you ever get that fixed?

17       A.    Yes.

18       Q.    Did the ATF help you get that fixed?

19       A.    Yes.

20       Q.    When your license was suspended or revoked,

21  did Agent Ramos here drive you around, or how did you

22  get around that?

23       A.    Yes, he drove me around.

24       Q.    All right, Mr. Confidential Informant --

25  actually, I do have more questions for you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          So we just listened to this one longer call

2    where the defendant, Mr. Leal, gave you a phone

3    number to this guy you learned was named Daniel.  Do

4    you remember that?

5          A.   Yes.

6          Q.   And I think you testified that it was your

7    understanding that Mr. Leal was giving you that phone

8    number --

9               MR. BOWLES:  Your Honor, I'm going to

10   object to leading.

11              THE COURT:  Don't lead him.

12              MR. HURTADO:  Yes, sir, Your Honor.

13   BY MR. HURTADO:

14         Q.   What did you do with the phone number that

15   Mr. Leal gave you for Daniel or the man you knew as

16   Primo?

17         A.   I called it a couple of times.

18         Q.   You called it a couple of times.  Did you

19   ever get a response from Daniel, or Primo?

20         A.   Not at the moment; after I shot him a text.

21         Q.   And he responded to you then?

22         A.   Yes.

23         Q.   And based on that response, what did you

24   and Daniel, or Primo, as you know him, discuss?

25         A.   Crystal meth.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      Q.   Crystal meth.  How much did Daniel agree to

2  sell you?

3      A.   Two ounces.

4      Q.   Is that what you negotiated for?

5      A.   Yes.

6      Q.   Do you remember whether you and Daniel had

7  come to an agreement about how much the

8  methamphetamine -- you would have to pay?

9      A.   The following day.

10     Q.   The following day.  The following day,

11  where did you meet Daniel?

12     A.   At a Walmart.

13     Q.   Was that here in the city of Albuquerque,

14  county of Bernalillo, in the state of New Mexico?

15     A.   Yes.

16     Q.   Who were you accompanied with?

17     A.   With ATF Agent Carlos Valles.

18     Q.   Had you ever worked with Agent Valles

19  before?

20     A.   Yes.

21     Q.   Why was Agent Valles with you on this day?

22     A.   He was doing undercover.

23     Q.   And just to clarify, what month and what

24  year are we talking about?

25     A.   July 2016.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.    July 2016.  And I'm sorry, why was Agent

2   Valles with you, if you know?

3      A.    He was doing the deal with me, as in he was

4   playing the role as an undercover agent, but also a

5   street hustler.

6      Q.    I think you said that you and the

7   undercover agent went to Walmart?

8      A.    Yes.

9      Q.    How did you and the agent get there?

10      A.    In his vehicle.

11      Q.    Did Daniel, or Primo, end up showing up, as

12   well?

13      A.    Yes.

14      Q.    How did he get there?

15      A.    In his vehicle.

16      Q.    What happened once Primo, or Daniel, got

17   there?

18      A.    I jumped out the vehicle, and sat in the

19   front passenger side, and a minute later Carlos

20   jumped out and sat in the backseat of the vehicle.

21      Q.    So as I understand it, it's Daniel,

22   yourself, and Agent Valles in the car; is that

23   correct?

24      A.    Yes.

25      Q.    What happened inside the car?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   I introduced them to one another so they

2   could see each other, and I stepped out, and they

3   started talking among each other.

4      Q.   Did you see Daniel give anything to the

5   agent?

6      A.   Yes, 2 ounces of crystal meth.

7      Q.   Did you see the agent give anything to

8   Daniel?

9      A.   Yes, money.

10      Q.   After the money and the drugs were

11   exchanged, where did you guys go?

12      A.   We jumped out and went back to our vehicle

13   and took off.

14      Q.   And did Daniel leave in his own separate

15   direction?

16      A.   Yes.

17      Q.   Did you have contact with Daniel again?

18      A.   Yes.

19      Q.   When was this?

20      A.   August of 2016.

21      Q.   August of 2016.  And what happened on this

22   occasion?

23      A.   Another order for 2 ounces of crystal meth.

24      Q.   From Daniel?

25      A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Q. Did you place that order?

2   A. Yes.

3   Q. Do you know how much it was for?

4   A. Two ounces.

5   Q. I'm sorry, price.

6   A. Give or take 450, 500.

7   Q. Dollars?

8   A. Yes.

9   Q. Per ounce?

10   A. No, per ounce was $250, $200.

11   Q. And tell us where this deal took place.

12   A. At a car wash.

13   Q. Car wash.  Was that, again, in the city of

14 Albuquerque, county of Bernalillo, state of New

15 Mexico?

16   A. Yes.

17   Q. And describe what happened.

18   A. We drove up.  We waited for him.  We parked

19 in one of the stools where you wash the car.  He

20 showed up, parked right next to us.  We jumped out,

21 me and Carlos, and we tried to lure him towards the

22 vehicle so we could look at the stash com --

23 compartment.

24   Q. What happened once Daniel -- once you saw

25 Daniel there at the car wash?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.   He jumped out of his vehicle.  He came

2   around at that moment.  I knew my position to get in

3   the back of the car while ATF arrested him.

4       Q.   So you knew ATF in advance was going to

5   arrest him?

6       A.   Yes.

7       Q.   Did you know whether Daniel brought

8   anything to the scene with him?

9       A.   Yes.

10      Q.   What did he bring?

11      A.   Crystal meth.

12      Q.   Have you testified here today to the best

13  of your ability and knowledge?

14      A.   Yes.

15           MR. HURTADO:  Your Honor, I have no further

16  questions.  Thank you.

17           THE COURT:  Thank you, Mr. Hurtado.

18           Mr. Bowles, do you have cross-examination

19  of the confidential informant?

20           MR. BOWLES:  Yes, Your Honor.

21           THE COURT:  Mr. Bowles.

22                   CROSS-EXAMINATION

23  BY MR. BOWLES:

24      Q.   Confidential Informant, you started working

25  for the ATF in approximately October of 2012; is that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   right?

2       A.   Yes.

3       Q.   Before that, you had worked for the Chicago

4   Police Department and the FBI; is that right?

5       A.   Yes.

6       Q.   And both the Chicago Police Department and

7   the FBI had paid you for your work?

8       A.   Yes.

9       Q.   Do you have any idea how much money you got

10  from the Chicago PD and FBI over the years?

11      A.   About $25,000.

12      Q.   And the ATF has paid you approximately

13  $125,000; is that correct?

14      A.   Yes.

15      Q.   You stated on direct examination you have

16  to put deals on the table to make money; is that

17  right?

18      A.   Yes.

19      Q.   And so when you put a deal on the table,

20  the ATF pays you; is that right?

21      A.   Correct.

22      Q.   In this case, you're getting $600 to come

23  into this courtroom and testify, you were paid $600

24  for this case; is that right?

25      A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       Q.   And have you been paid money to drive out

2  here in your vehicle?

3       A.   No.

4       Q.   Oh, don't you get mileage reimbursed,

5  Confidential Informant?

6       A.   Yes.

7       Q.   That's through the U.S. Attorney's Office;

8  right?

9       A.   Yes.

10      Q.   You also get your hotel paid for; correct?

11      A.   Yes.

12      Q.   How many days are you out here?  One or

13  two?

14      A.   A week.

15      Q.   A week.  Do you spend that whole week

16  preparing with the Government?

17      A.   Not the whole week.  A couple of days.

18      Q.   A couple of days.  So you get in with them

19  for a couple of days and prepare for your testimony.

20      A.   Yes.

21      Q.   And you know that this case, the deal that

22  you're working on, is Gaspar Leal; right?

23      A.   Yes.

24      Q.   And he's the only one on trial here?

25      A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   And you've been paid $600.  Now, over the

2    years, you were paid $125,000.  And is that all in

3    cash?

4    A.   Yes.

5    Q.   And that was all to put deals on the table

6    for the ATF; correct?

7    A.   Yes.

8    Q.   Now, at any given time, under your

9    contract, do you get paid, for example, $10,000 and

10   another time you get $5,000?  And my question is:  Do

11   the numbers vary?  The amounts you get paid vary?

12   A.   What do you mean?

13   Q.   So for this deal, let's say you get paid

14   $2,000 in cash.  And for this deal in three months,

15   they might give you $5,000 in cash.

16   A.   Not if I got in one -- the right amount

17   every week, like a regular check.

18   Q.   Every week they give you cash?

19   A.   Yes.

20   Q.   How, at the end of the year, do you report

21   all that income?

22   A.   Taxes.  I fill out a form.

23   Q.   Have you put all of this on your tax

24   returns over the years?

25   A.   I end up giving back.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   You gave back what?

2      A.   I end up paying.  I end up owing, in other

3 words.

4      Q.   How much money do you owe?

5      A.   At the moment, off the top of my head, I

6 can't --

7      Q.   Do you have any other jobs the last seven

8 years besides working for the ATF?

9      A.   No.

10      Q.   So the last seven years, your entire income

11 has been the ATF?

12      A.   Yes.

13      Q.   Have you sold any drugs on the side?

14      A.   No.

15      Q.   Do you have a house?

16      A.   No.  I used to.

17      Q.   When did you sell your house?

18      A.   After me and my wife divorced.

19      Q.   Was that the last couple of years?

20      A.   Yeah.

21      Q.   So --

22      A.   Three years.

23      Q.   Three years?

24      A.   Yeah.

25      Q.   But for the past seven years, at least four

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       of those years, you were paying on a house.

2            A.   Yes.

3            Q.   How much were those monthly payments?

4            A.   $1,000.

5            Q.   Were you paying on a car?

6            A.   Yes.

7            Q.   How much were you paying on that car?

8            A.   $600, with insurance.

9            Q.   And what kind of car was that?

10           MR. HURTADO:  Objection, Your Honor,

11      relevance.

12           THE COURT:  Overruled.

13           A.   I had a conversion van.

14      BY MR. BOWLES:

15           Q.   And aside from the house and car expenses,

16      I'm assuming you had other expenses for your

17      household?  You said you had children?

18           A.   Yes.

19           Q.   You have food, groceries?

20           A.   Yes.

21           Q.   You have utilities?

22           A.   Yes.

23           Q.   Did you have a personal cellphone?

24           A.   Yes.

25           Q.   Did you have cable TV?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        A.    Yes.

2        Q.    Would it be safe to say that $1,000 for

3   your house, $100 for your car, utilities, food and

4   everything, you have about a $2,500 monthly budget?

5        A.    Yeah, give or take.

6        Q.    So that would come out to about $30,000 per

7   year; is that right?

8        A.    Yes.

9        Q.    Was your wife working during those years?

10       A.    She had a part-time.

11       Q.    And do you know how much she was making?

12       A.    Probably 100 bucks a week.

13       Q.    So approximately $400 a month.  So that

14   would be $4,800 a year, approximately?

15       A.    Yeah.

16       Q.    Now, the ATF agent earlier testified that

17   you were making, from payments from the ATF,

18   approximately $17,900 a year.  Does that sound about

19   right to you?

20       A.    I mean, give or take.  I mean, it's not

21   always like it's the whole year thing that you're

22   working, you know, working for them or traveling and

23   stuff like that.  It depends if you get to go out

24   there and do something, or you stay back home and do

25   the work there.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6436

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1     Q.   I thought you said earlier you get paid

2  every week in a set amount.

3     A.   Yes, while you're working.  While you're

4  doing something -- as long as you're bringing

5  something to the table, you get paid.  If I don't

6  bring it to the table, I don't get paid.

7     Q.   So it's not even certain it was $17,000.

8  If you're not working, you're not getting paid.

9     A.   Exactly.

10     Q.   So you're telling the jury your only job

11  was the ATF the last seven years, but in those four

12  years you were making about $18,000 a year, your wife

13  about $5,000, but your expenses were about $30,000.

14  So that's $23,000 you're making and your expenses for

15  your household are about $30,000.  Where was that

16  other money coming from?

17     A.   Expenses, going out, heating, clothes.  It

18  all adds up.

19     Q.   I know the expenses add up.  I totally

20  agree with you on that.  I'm saying, where were you

21  getting the other money to pay for that?  Because

22  you're not making enough from the ATF and your wife's

23  salary.

24     A.   I'm making $1,000 a week.  How am I not

25  making enough?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   You're making $1,000 a week?

2     A.   Give or take $900 a week.

3     Q.   You're saying you're make $50,000 a year?

4     A.   I mean, I don't keep track, but what comes

5 to my hands goes to my bills.

6     Q.   So you're telling me you're making $50,000

7 a year from the ATF?

8     A.   But like I said, not always through the

9 whole thing when we're traveling or -- if I'm at

10 home, it's less.  If I travel, it's about $900 a

11 week.

12     Q.   That's when you're really working, bringing

13 cases in?

14     A.   Um-hum.

15     Q.   Is that right?

16     A.   Yes.

17     Q.   Now, during this time I think you said you

18 also had a personal cellphone; correct?

19     A.   Yes.

20     Q.   And you're able to use that personal

21 cellphone for whatever you want to use it for; right?

22     A.   Exactly.

23     Q.   So now, I know you said -- you told the

24 jury earlier that they can believe you because

25 everything you do is recorded, but there was nothing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1 stopping you -- you can use your personal cellphone

2 during the day, during the week, during the month;

3 right?

4       A.   Yes.

5       Q.   And do you have just one personal cellphone

6 or do you have multiple?

7       A.   It was one phone with two lines.

8       Q.   One phone and two lines?

9       A.   Yes.

10      Q.   So the other line was not recorded?

11      A.   No, it was my personal line.

12      Q.   Okay.  And do you have personal, like,

13 texting abilities, Snapchat, things like that?

14      A.   Yes.

15      Q.   So you could do all that without them

16 knowing about it; right?

17      A.   Exactly.

18      Q.   And you also, during this timeframe, when

19 you were under ATF contract, my understanding, you

20 were arrested for driving on a suspended license;

21 correct?

22      A.   Correct.

23      Q.   Now, the ATF then helped you get that

24 worked out, I know.  But prior to that, you hadn't

25 told Agent Ramos that you were driving on a suspended

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1 license until you got arrested; right?

2     A.   I don't remember.

3     Q.   Well, you were arrested, and so that

4 happened; right?  You were arrested?

5     A.   Yes.

6     Q.   If you had told Agent Ramos before, don't

7 you think he would have helped you fix that before

8 you were arrested?

9     A.   I mean, I took that upon myself.  I had to

10 take my kids to school and stuff like that.

11     Q.   I know.  You had to drive.  But your

12 license was suspended.

13     A.   Yes.

14     Q.   And do you know how long you were driving

15 on a suspended license?

16     A.   A couple months.

17     Q.   Was that because of a DWI?

18     A.   It was -- DUI, you mean.

19     Q.   DUI, driving under the influence.

20     A.   Uh-huh.

21     Q.   Is that why your license got suspended?

22     A.   Yes.

23     Q.   So as part of your contract with the ATF,

24 you're not supposed to commit crimes; right?

25     A.   Exactly.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   And when you got arrested, what -- did you

2    tell the ATF?

3    A.   I told them, but technically, it was -- it

4    said in the contract any felonies.  That was a

5    misdemeanor.

6    Q.   So for misdemeanors, you're saying the ATF

7    just lets you -- free pass?  You can do a

8    misdemeanor?

9    A.   No, no, but in the contract it says any

10   felonies, and that wasn't a felony.

11   Q.   So you didn't commit a felony, so you're

12   okay.

13   A.   I mean, I committed -- I shouldn't have

14   done what I've done, but I don't think that I messed

15   up with the contract.

16   Q.   So you had a DWI during that timeframe;

17   right?

18   A.   Yes.

19   Q.   And were you drinking excessively?

20   A.   Go to parties, just had a couple of beers

21   with a couple of friends.

22   Q.   Pulled over, driving while intoxicated?

23   A.   Yes.

24   Q.   Did you have two of them during that

25   timeframe?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.   I beat the second one.

2       Q.   You beat the second one?

3       A.   Yes.

4       Q.   Okay.  Was that because the officer didn't

5 show up, or the agents helped you, or how did you

6 beat it?

7       A.   Because they gave me a Breathalyzer test

8 and it came out to 0.000, so there was no -- I wasn't

9 intoxicated.  And the judge seen that and threw it

10 out.

11       Q.   But you had been drinking.

12       A.   From their understanding, they thought I

13 was intoxicated, but it was because of my diabetes.

14       Q.   So you're saying that you had diabetes --

15       A.   I've been having it for the last 12 years.

16       Q.   But you're saying that you were driving

17 while intoxicated, but they did a Breathalyzer, and

18 you didn't have -- it was 0.0?

19       A.   Um-hum.

20       Q.   You were drinking, though; right?

21       A.   No.  If I was, I would have caught another

22 case.

23       Q.   You're saying your diabetes -- they thought

24 you were drunk?

25       A.   Yeah, because my sugar was down.  So then

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    when I start sweating, I start looking kind of blurry

2    and stuff.  I usually got to park.  And the reason

3    they stopped me, because I parked in a one-way, and

4    he thought I was under the influence of something.

5    And I tried to tell him, explain to him, but he ended

6    up doing what he had to do, doing his job, and I just

7    went along with it.  And in the end I knew that I

8    wasn't intoxicated.  I knew the judge would look it

9    and throw it out.

10        Q.   Did you do time?

11        A.   No, I beat it the second I went to court.

12        Q.   And they dropped the charges?

13        A.   Yeah.

14        Q.   Did you tell the ATF about this?

15        A.   No, that I remember.  No.  Not the second

16   time, because it was thrown out.

17        Q.   Okay.  But when you get arrested or

18   charged, you know you're supposed to tell the ATF

19   about this stuff, aren't you?  Don't you?

20        A.   If I catch a case or something.  I don't

21   think I caught a crime, I did a crime or something

22   because I got arrested.  I wasn't charged with it.

23        Q.   Now, Confidential Informant, your call with

24   Jose Casias -- and that's call 2 on the second tab

25   that we listened to -- do you remember that call?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   Yes.

2    Q.   And do you remember Mr. Casias talks to you

3    and he tells you that he pushes weed?  Do you

4    remember that?

5    A.   Yes.

6    Q.   And do you remember he says he doesn't push

7    chronic, he pushes the swag?

8    A.   Yes.

9    Q.   And do you remember later on, on page 13 of

10   that call, you say that you usually get two zippers?

11   A.   Yes.

12   Q.   So you're telling Jose -- you're basically

13   letting him know that you're trying to get two

14   zippers of methamphetamine; right?  You're trying to

15   get crystal.

16   A.   Yes.

17   Q.   And two zippers, as we went over, is 2

18   ounces.  You're trying to get 2 ounces; is that

19   correct?

20   A.   Yes.

21   Q.   And then later on, you told the jury that

22   you were able to connect with Daniel Carmona and

23   you're able to get those two zippers from Daniel

24   Carmona; is that right?

25   A.   Yes.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   Now, when Jose Casias first talks to you

2  and he says, "I push weed, homie," did you try to get

3  any weed from him?

4    A.   No.

5    Q.   So the ATF, was it your instruction that,

6  "Don't worry about weed.  Just go out and get

7  methamphetamine."

8    A.   Or heroin.

9    Q.   Or what?

10    A.   Heroin.

11    Q.   Okay.  So if Casias is telling you he

12  pushes weed, you're not even concerned about that.

13  You're out there trying to get methamphetamine.

14    A.   Right.

15    Q.   Or heroin.

16    A.   Yes.

17    Q.   And then, after you tell him that, you're

18  not interested in weed, then basically there's more

19  calls made and Jose is trying to find -- and he got a

20  girl on Facebook, and you're trying to track down

21  somebody to get you the methamphetamine in

22  Albuquerque.  Is that kind of how it happened?

23    A.   I didn't ask for all that.  He brought it

24  up and told me that he could do this and this for me.

25  I didn't put pressure on the issue.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        Q.   You didn't pressure him, but you said to
2   start it.  Would you agree with me on this?  You
3   said, "Like, I want two zippers."  You're the one
4   that started that process; correct?
5        A.   I was led to him to give him a call because
6   he could direct me in the right direction.
7        Q.   And I understand that, but I'm saying,
8   again, to clarify, you're the one that said, "Like, I
9   want two zippers"; right?
10        A.   I said I usually get two zippers.
11        Q.   Usually get two zippers.
12        A.   Yes.
13        Q.   So on the street, you're wanting him to
14   know that what you're after is methamphetamine.
15        A.   Yes.
16        Q.   Now, he also talks about that he heard you
17   push black Jordans, and that means heroin?
18        A.   Yes.
19        Q.   And you said because you're out on the
20   street, that people thought you might be selling
21   heroin; is that right?
22        A.   Yes.
23        Q.   Were you selling heroin?
24        A.   No.
25        Q.   As part of this operation, did you sell
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    heroin to anybody?

2         A.    No.

3         Q.    And at any time during this operation were

4    you selling anything -- cigarettes, any other items?

5         A.    I got rid of tobacco cigarettes.

6         Q.    You got what?

7         A.    I got rid of cigarettes.

8         Q.    So you sold some cigarettes?  Were you

9    making money on that?

10        A.    Not really.  A couple of dollars here and

11   there.

12        Q.    Did you sell any other narcotics?

13        A.    That's not narcotics.

14        Q.    I know it's not narcotics.  But I mean,

15   anything beside heroin?  Did you sell any narcotics?

16        A.    No.

17        Q.    At any given time during this case that you

18   were working on, did you use narcotics?

19        A.    No.

20        Q.    Have you used any since you've been on the

21   ATF contract?

22        A.    No.

23        Q.    Even marijuana?

24        A.    No, I don't smoke that.

25        Q.    Not heroin, not meth?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.    No.

2      Q.    And not cocaine?

3      A.    No.

4      Q.    Just some alcohol?

5      A.    No.  From time to time.

6      Q.    You said that you reported all this income

7   on your tax returns; is that right?

8      A.    Yes.

9      Q.    Has anybody from the agency ever checked

10   your tax returns?  Have they sat you down and talked

11   to you about that?

12      A.    They talked to me about them, but I never

13   proceeded to need the help.

14      Q.    Did you ever show them to them?

15      A.    No.

16           MR. BOWLES:  Your Honor, may I have just

17   one moment?

18           THE COURT:  You may.

19           MR. BOWLES:  Your Honor, that's all the

20   questions I have.

21           THE COURT:  Thank you, Mr. Bowles.

22           Mr. Hurtado, do you have redirect of the

23   confidential informant?

24           MR. HURTADO:  Yes, sir, Your Honor.

25           THE COURT:  Mr. Hurtado.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

REDIRECT EXAMINATION

BY MR. HURTADO:

1      Q.   Confidential Informant, I wanted to ask you

2 a follow-up question concerning Mr. Bowles' question

3 on cross-exam about your personal cellphone. I think

4 you indicated that you had an app that ATF gave you

5 on your phone; is that correct?

6      A.   Correct.

7      Q.   Do you know whether the ATF ever checked

8 your personal phone? Or how did that happen?

9      A.   I choose the number, my personal line. I

10 call my family, my loved ones. And the work number

11 on there that calls people I knew on the streets

12 records all calls at all times.

13      Q.   Did you ever use your personal phone

14 without the app when you were working for the ATF?

15      A.   Yes.

16      Q.   You did use it?

17      A.   Yes. But I told them every time, "This guy

18 told me on my number." I text message screen shots

19 at all times to show them what was the discussion

20 about.

21      Q.   So at all times, your contacts were

22 recorded?

23      A.   Yes. After they came out with this app,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    then it changed things.

2         Q.    Let me ask you this.  With respect to the

3    man you know as Primo, who was later identified by

4    the ATF as Daniel Carmona, would you have ever been

5    able to contact Primo if the defendant had not given

6    you his phone number?

7         A.    No.

8              MR. HURTADO:  Your Honor, I have no further

9    questions.

10             THE COURT:  Thank you, Mr. Hurtado.

11             Anything else, Mr. Bowles?

12             MR. BOWLES:  No, thank you, Your Honor.

13             THE COURT:  All right, Mr. Confidential

14   Informant, you may step down.

15             Is there any reason the confidential

16   informant cannot be excused from the proceedings, Mr.

17   Hurtado?

18             MR. HURTADO:  No, Your Honor.

19             THE COURT:  Can he be excused, Mr. Bowles?

20             MR. BOWLES:  Yes, Your Honor.

21             THE COURT:  All right.  You're excused from

22   the proceedings.  Thank you for your testimony.

23             All right, Mr. Hurtado, does the Government

24   have its next witness or evidence?

25             MR. HURTADO:  I apologize, but the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Government does not.  The Government has two

2  witnesses left, both of whom are coming in at 8:00

3  today, so I apologize.

4        THE COURT:  Well, that apology is not going

5  to do.  We're at 4:10.  The jury knows it's a two-day

6  trial.  Are you prepared to rest?  You don't run out

7  of witnesses, Mr. Hurtado.

8        MR. HURTADO:  Yes, sir, Your Honor.  Yes,

9  Your Honor, the United States rests.

10        THE COURT:  All right.  Do you have any

11  witnesses or evidence, or do you need to take

12  anything up before the jury -- before we hear from

13  the jury?

14        MR. BOWLES:  Your Honor, just a motion.

15        THE COURT:  All right.  Why don't I excuse

16  the jury for a few moments and talk to the lawyers.

17  So we'll be in recess for about 15 minutes.

18        All rise.  It may take a little longer, so

19  relax.  But I need to talk to the attorneys for a

20  while.

21        (The jury left the courtroom.)

22        THE COURT:  All right.  Everyone be seated.

23        All right.  Mr. Bowles.  Do you have a

24  motion to make?

25        MR. BOWLES:  Your Honor, just for the,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    record on the distribution counts, Counts 2 and 3, I

2    think with the Court's instructions I would be moving

3    for a directed verdict that there is not sufficient

4    evidence to submit to the jury the distribution

5    counts.  The evidence in the calls thus far is that

6    Mr. Leal gave him the name of Jose Casias, the call

7    was made, and the Court has heard all the calls.

8          The best evidence the Government has is

9    that the defendant gave a number for Mr. Carmona to

10    the confidential informant, who then stated he

11    couldn't have called him without that number.  That's

12    about the best they could think of.  But there is

13    insufficient evidence, even from those calls, that

14    Mr. Leal understood the purpose and nature.  When he

15    first gave him Jose Casias' number, Mr. Casias says,

16    "I push weed," and then the confidential informant

17    turns it to a call about methamphetamine, and then

18    they get to Daniel Carmona.

19          I don't even think there is enough in the

20    light most favorable that he's distributed or aided

21    and abetted that distributing.  And I would make the

22    same motion for the record on the conspiracy count.

23          THE COURT:  All right.  Thank you, Mr.

24    Bowles.

25          Mr. Cairns, do you have response to the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    motion?

2            MR. CAIRNS:  Yes, Your Honor.  I think

3    there is more than sufficient evidence for this case

4    to go to the jury.  Again, the defendant is charged

5    with three crimes.  There is one count of conspiracy,

6    and there's two counts of distribution.

7            With regard to the conspiracy count, as the

8    Court is well aware, no crime actually has to occur;

9    that merely the agreement itself is a crime.  I think

10   there is more than sufficient evidence in these phone

11   calls to indicate that there is an agreement between

12   Mr. Leal, Jose Casias, and Mr. Arreola-Palma, as well

13   as others that are known and unknown to the grand

14   jury.  And I mean, that would include, of course,

15   Daniel Carmona, who ultimately distributes

16   methamphetamine.

17           Again, once that agreement is sealed, that

18   crime has been committed, the defendants need only

19   take -- or someone only needs to take one step in

20   furtherance of the conspiracy, and I would ask the

21   Court to observe that the actual drug transaction did

22   occur, so that would be a step in furtherance of the

23   conspiracy.

24           Moreover, after the initial information was

25   provided to Mr. Gaspar Leal, he did make a phone call

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  to Jose, and again, that is also a step forward; and

2  Jose spoke to him.  Again, I understand that the

3  confidential informant is not a member of the

4  conspiracy because he's a Government actor, but Jose

5  spoke to him and said he would try and find a source

6  of crystal methamphetamine from a girl on Facebook.

7  That's a substantial step in furtherance of the

8  conspiracy.  The actors were acting independent of

9  one another, because obviously, two of them are in

10  jail.  So their role is to help set up the drug

11  transaction while they're incarcerated.  And the role

12  of the people who were outside the jail is to

13  actually consummate the drug transaction.  So there

14  is interdependence among the members of the

15  conspiracy.  So the elements of the conspiracy are

16  met.  In fact, they are actually met twice, once with

17  the initial phone call to Jose Casias, and then once

18  again and then twice when the information is provided

19  to him, provided to defendant Leal, which he uses to

20  contact Daniel Carmona.

21       So there are actually two conspiracies

22  involved.  Defendant is only charged with conspiracy

23  in one count, but the Court would observe the dates

24  in the indictment are from July 21, 2016, and

25  continuing on or about August, 2016.  Again, that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  covers both conspiracies.  The jury could find that

2  either conspiracy fits within that timeframe.

3           With regard to Counts 2 and 3 of the

4  indictment, these are distribution counts, but

5  they're charged pursuant to Title 18 United States

6  Code section 2, which is aiding and abetting.  As the

7  Court's well aware, the defendant need not

8  participate in the crime himself to be guilty of

9  aiding and abetting.  He merely needs to help someone

10  else commit the crime, associate himself with

11  criminal activity, have knowledge of the object of

12  the criminal activity as to what the crime involves,

13  at least some knowledge.

14           I believe all those elements are met by

15  these tape-recorded phone calls.  You know, again,

16  the Government acknowledges Mr. Leal is not there

17  when the transaction occurred, but to be guilty under

18  a theory of aiding and abetting, you need not be

19  there, he need not participate in the transaction.

20  He need only associate himself with it and assist in

21  bringing it about with the knowledge that the

22  objective is to commit a crime.

23           So I would submit that there is sufficient

24  evidence on all three of these counts at least for it

25  to go to the jury, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        THE COURT:  All right.  Thank you,

2    Mr. Cairns.

3        Mr. Bowles, do you have anything further?

4        MR. BOWLES:  No, Your Honor.

5        THE COURT:  Well, I think Mr. Cairns has

6    outlined well the evidence that supports the counts

7    that the Government wishes to submit to the jury.  I

8    do think there is -- on some of those that Mr. Bowles

9    specifically mentioned, there is sufficient evidence

10   for a jury to find beyond a reasonable doubt that

11   there was an agreement.  The fact that then the

12   confidential informant saw the fruits of that

13   conspiracy occurring.  So I think the three counts of

14   the indictment on the two distribution counts -- I

15   think at least there is sufficient evidence of aiding

16   and abetting.  So I think those should be submitted

17   to the jury, as well.  So I'm going to deny the

18   motion for a directed verdict and allow the case to

19   proceed to the jury.

20       Mr. Bowles, do you wish to present evidence

21   or witnesses?

22       MR. BOWLES:  No, Your Honor.

23       THE COURT:  All right.  Why don't we do

24   this.  Why don't I have -- I want to make one change

25   here, because I think that when we tell the jury that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  they can't consider the acts of other people, I think

2  we have to be a little careful with that because we

3  do have a conspiracy count here, and aiding and

4  abetting.  So I think we have to rewrite that a

5  little bit to say they can consider the acts of other

6  people but only in those two instances.  So see if

7  you like the language I've done.  I've done different

8  things in the past, but this one -- since in this

9  case we have both aiding and abetting and conspiracy.

10        I also put in an accomplice instruction

11  here.  I mean, the Government's case is heavily

12  dependent upon an accomplice.  So the Tenth Circuit

13  has a pattern instruction on accomplice, and I do

14  think they should be given the cautionary instruction

15  on accomplices.  So let's -- unless somebody thinks

16  otherwise, I would be inclined to include this,

17  because I do think that that should be included.

18        So if you'll give me just a few moments,

19  I'll print out the jury instructions to you and give

20  you a chance to look at them.  And then I can also

21  put on the podium the instructions, the changes that

22  I made to the clean set that you have, so that you

23  can rather quickly see what I changed.

24        MR. BOWLES:  Yes, Your Honor.

25        THE COURT:  Anything we need to discuss

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  before we go into recess, so I can get you the

2  instructions?  Mr. Cairns, Mr. Hurtado?

3           MR. CAIRNS:  No, Your Honor.  I'm just

4  curious as to -- obviously we're a little ahead of

5  schedule and that's our fault, or my fault, our

6  fault.  But are we going to be proceeding to closings

7  today, or are we going to start first thing in the

8  morning?

9           THE COURT:  What's your preference?

10           MR. CAIRNS:  I would greatly prefer that we

11  start first thing in the morning, Your Honor.  I'd

12  greatly prefer that.  I think that both the jurors

13  and the attorneys in the case are tired.  We've been

14  on our feet -- well, I should say Mr. Hurtado has

15  been on his feet most of the day, and I just feel

16  that it would be better to start first thing in the

17  morning when jurors are fresh and they're able to

18  listen to the closing arguments.

19           The Court had graciously granted me 40

20  minutes for closing argument, and then Mr. Bowles has

21  30 minutes.  By the time we get through closing

22  arguments, we're going to be well on after 5:30

23  before we finish.  And of course, then the jury has

24  to be charged, has to be instructed.

25           THE COURT:  I think we agreed we would

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   charge before.  So I guess what I was thinking is,

2   maybe we would charge and then break for the evening,

3   and then you would start your closings in the

4   morning.  Does that work for you?

5         MR. CAIRNS:  I have no strong objection to

6   that, Your Honor.  I would say that I would prefer

7   for the jury to be read their instructions

8   immediately before closing so that the instructions

9   are fresh in their mind.  But they will have copies

10   of the instructions in the room with them, so I don't

11   have a strong view on that one way or the other, if

12   the Court is inclined to instruct them before they go

13   home in order to conserve time and judicial

14   resources, and then we could come back tomorrow and

15   go ahead and go into closings, because they will have

16   copies of the instructions with them in the jury

17   room.

18         So I don't have a strong preference as to

19   that one way or the other.  But generally, my weak

20   preference is:  I prefer them to be instructed right

21   before closing.  But again, I understand the Court is

22   trying to conserve its own time and the time of the

23   jurors who are here.  I understand that.

24         MR. BOWLES:  I think we should instruct

25   them tonight.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        THE COURT:  Let's see if we can.  I want to

2  give you a chance to look at these instructions.

3  They're largely what you've seen and agreed to, but I

4  have pecked at them a little bit, and I want to make

5  sure that you get a chance to look them over, the

6  accomplice one, what I've done on this one with, they

7  shouldn't consider anybody else except on the

8  conspiracy; and aiding and abetting, I think that one

9  needs to be tinkered with a little bit, and the Tenth

10  Circuit comment notes.  So take a look at it.  If

11  they're ready to go, I think we can give them and

12  then rest for the evening, and you'd prefer to start

13  your closings in the morning?

14        MR. BOWLES:  Yes, I think Mr. Cairns is

15  right.  If the Court will allow that, we start in the

16  morning.  I think everybody -- it went pretty good

17  today.

18        THE COURT:  Let's see if we can get them

19  instructed.  If we can't, we can't.  But let me see

20  if we can.  So let me go back here.  And anything

21  else we need to discuss before we take our recess,

22  Mr. Cairns?

23        MR. CAIRNS:  No, only if I'm going to have

24  an opportunity to go to the men's room.

25        THE COURT:  Yeah, we're going to go into

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    recess.  Let me see if I can get you a set.

2              (The Court stood in recess.)

3              THE COURT:  All right.  We'll go back on

4    the record.  I handed you the jury instructions as

5    much as I could work on them, as well.  I put here on

6    the podium, if you want to look.  These are the

7    changes that were made.  There were a few more

8    changes made in the footnotes, but not in the text.

9              So if you want to look rather quickly at

10   what changes were made from the one that you got this

11   morning, there they are, if that helps you.

12             And Mr. Bowles, when I reached over and put

13   yours, Mr. Leal wanted to shake my hand, and I just

14   didn't want to have any contact with him while you

15   were out of the room.  But it's not that I don't want

16   to shake hands with him.  I just didn't want to have

17   any contact with him.

18             MR. BOWLES:  Yes, Your Honor.

19             (A discussion was held off the record.)

20             THE COURT:  Back on the record.  I did not

21   include the similar acts instruction because we

22   cleaned all that up with concessions on the 404(b),

23   and I didn't think that we ought to highlight

24   anything else.  Do you agree with that, Mr. Bowles?

25             MR. BOWLES:  I do.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1         THE COURT:  Do you agree with that, Mr.

2  Hurtado?

3         MR. HURTADO:  Yes, sir.

4         THE COURT:  So I kept that one out.

5         Mr. Cairns, Mr. Hurtado, do you want to

6  look at the podium there?  Will that help you any to

7  see what I changed from the set you got this morning?

8         If y'all will give me liberty on the

9  footnotes, I won't show you everything I do on the

10  footnotes.  Those are just to kind of to make sure

11  that down the road you and the Tenth Circuit know

12  where I get this stuff.  Do we need expert witness

13  testimony at all now?

14         MR. HURTADO:  No, sir.

15         MR. CAIRNS:  We didn't have any expert

16  witnesses.

17         MR. BOWLES:  He did talk briefly about the

18  reason he used coded language.

19         THE COURT:  Shall I put Mr. Ramos in there

20  on that?

21         MR. HURTADO:  Sure.

22         THE COURT:  So you want to take that

23  instruction and put -- I'm sorry.  What was his first

24  name?

25         MR. HURTADO:  Michael.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Can I just put him?

2          MR. HURTADO:  Yes.

3          THE COURT:  I think that description of him

4    talking about drug trafficking.

5          MR. BOWLES:  Yes.

6          (A discussion was held off the record.)

7          THE COURT:  All right.  Why don't we go on

8    the record.  If you need more time on any particular

9    one, we can come back to that.  But let me just kind

10   of go through these, the set I have, and see if you

11   have any changes, suggestions, comments, or

12   objections you need to make.  If I don't hear

13   anything I'll keep going.  Instruction number 1,

14   instruction number 2, instruction number 3.

15         MR. CAIRNS:  Your Honor, I'm sorry, let me

16   catch up with you.

17         THE COURT:  All right.  Take your time.

18         MR. CAIRNS:  Instruction number 1,

19   instruction number 2, instruction number 3.

20         THE COURT:  Number 4, I'll need to take out

21   some of this.  "During the trial I did not let you

22   hear the answers."  That one is probably true.  I

23   sustained some objections.  I didn't order anybody to

24   disregard things or struck anything from the record.

25         So what I would suggest is:  I take out the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    second sentence and unbold the rest of it.  Would

2    that work for everybody?  Would that work for you,

3    Mr. Cairns?

4              MR. CAIRNS:  Yes, Your Honor.

5              THE COURT:  Does that work for you,

6    Mr. Bowles?

7              MR. BOWLES:  Yes, Your Honor.

8              THE COURT:  Number 5 is pretty stock.

9    Number 6.  You had a separate instruction.  The Tenth

10   does it, too.  I just used the one that they had, the

11   paragraph.  "Mr. Leal did not testify."  Just put it

12   in there.

13             Then on 7, we're going to put -- is Mr.

14   Ramos ATF Special Agent?

15             THE WITNESS:  Yes.

16             THE COURT:  So it will be just Michael

17   Ramos.

18             Number 8 is my informant instruction, but

19   it's based on the Tenth, just that two paragraphs.

20             MR. CAIRNS:  Your Honor, I don't think that

21   the paragraph on accomplice liability is applicable

22   here.  There was no testimony from an accomplice.

23   There is only testimony from an informant.

24             THE COURT:  I don't see the accomplice

25   language.  Do you?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     MR. CAIRNS:  It's at the very beginning of

2  the instruction.  It says, "The accomplice/informant

3  immunity."  The very first paragraph says, "An

4  accomplice is someone who joined" --

5     THE COURT:  Are you looking at the typed

6  version, Mr. Cairns?

7     MR. BOWLES:  That's not what's in the

8  instructions.

9     THE COURT:  Look at number 8, the typed

10  version.

11     MR. CAIRNS:  Okay.  Wait a second.  I may

12  not have that.  Let me look real quick.

13     THE COURT:  Mr. Hurtado, you have the clean

14  copy I gave you?

15     MR. HURTADO:  Yes.  I thought I had given

16  it to Mr. Cairns.

17     MR. CAIRNS:  This has the language omitted

18  as to accomplice liability, so I apologize to the

19  Court.

20     THE COURT:  Does that look okay, then, to

21  you?

22     MR. CAIRNS:  Yes, Your Honor.

23     THE COURT:  All right.  Number 9 is the

24  transcript language in the indictment.  11 is the

25  conspiracy count.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. CAIRNS:  Your Honor, if I might have

2     just a moment on that count, there are two things

3     with regard to the conspiracy count.  First of all,

4     the Government would request a lesser included

5     instruction as well as to Title 21, section 846.  The

6     lesser included would be -- would regard paragraph --

7     element number 5.  "The overall scope of the

8     conspiracy involved at least 50 grams and more of

9     methamphetamine."  I would request a lesser included

10    instruction simply that the overall conspiracy

11    involved methamphetamine.  I believe that the law

12    permits for a lesser included instruction.

13          THE COURT:  Any objection to that,

14    Mr. Bowles?

15          MR. BOWLES:  Well, I think they may need a

16    special verdict finding.

17          THE COURT:  Well, they have one.

18          MR. BOWLES:  They do?  Okay.

19          THE COURT:  But we'll have to -- we'll

20    probably need to modify the -- all right.  Let me see

21    if I can find it.  It's 133.  So what do I call this?

22    What do I call it?  Conspiracy --

23          MR. CAIRNS:  To distribute methamphetamine,

24    and it would simply say that if the --

25          THE COURT:  Conspiracy to distribute

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  methamphetamine?

2           MR. CAIRNS:  Yes, Your Honor.

3           THE COURT:  The difference between these

4  two offenses is that to convict the defendant of

5  conspiracy to distribute methamphetamine, the

6  Government does not have to prove -- what do you want

7  it to say?  The amount?

8           MR. CAIRNS:  The amount, any particular

9  amount of methamphetamine.

10          THE COURT:  Any particular amount.

11          (A discussion was held off the record.)

12          MR. CAIRNS:  Your Honor, I'm sorry, I hate

13 to be causing additional issues.  I'm just worried a

14 little bit about maybe potential appellate issues.

15 There are potentially two conspiracies that occurred

16 during the timeframe that is charged in the

17 indictment.  They're actually separate conspiracies

18 involving separate individuals.  I believe that we

19 may need a Richardson instruction with regard to the

20 two conspiracies, that essentially that the jury can

21 find that either one conspiracy existed or the other

22 conspiracy existed, or that both, but they must be

23 unanimously --

24          THE COURT:  Why don't you write out what

25 you want.  I don't really know what you're talking

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  about.

2          MR. CAIRNS:  It would be a unanimity of --

3          THE COURT:  Unanimity of theory?

4          MR. CAIRNS:  Yes.  And I believe there is a

5  Tenth Circuit pattern -- no, actually, I think you

6  have one, Your Honor, you've used before.

7          THE COURT:  There's a unanimity, but it's

8  going to take some work.

9          MR. BOWLES:  Judge, I don't know what the

10  evidence -- I don't know what we're referring to

11  here, why we have two conspiracies now within one

12  indictment.

13          MR. CAIRNS:  Well, again, because of the

14  timeframe, the jury could find that the initial phone

15  conversation that postdates Castillo's and

16  information provided by defendant Leal to the

17  confidential informant -- that that existed as a

18  separate conspiracy.  They could find, then, that

19  there is another conspiracy that arises during the

20  phone call with Arreola-Palma and with information

21  that's provided to the confidential informant about

22  Mr. Daniel Carmona.  So there are actually two

23  potential -- based on the indictment and the

24  timeframe, there is a potential for them to find two

25  conspiracies in existence in the timeframe, which

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    would be fine.  They could find there are two

2    conspiracies.  They can also find that there was one

3    conspiracy, but they need to agree unanimously that

4    one or the other existed.  They need to have a --

5          THE COURT:  Well, mark up what you want and

6    let's let Mr. Bowles and I look at it.

7          Mr. Hurtado, while Mr. Cairns is working on

8    that, tell me what changes now need to be made to

9    Count 1 of the verdict form to account for the lesser

10   included offense.

11         MR. HURTADO:  So Your Honor, to answer the

12   Court's question, given the way the verdict form

13   reads currently, we have Count 1, Count 2, and Count

14   3.  So the United States would add a Count 4 at the

15   bottom to include the lesser included offense for the

16   conspiracy.

17         MR. CAIRNS:  And that would be contingent

18   upon them failing to reach a verdict as to Count 1.

19         THE COURT:  Well, why don't you work on it.

20   We need language from the Government.  You're making

21   a lot of changes this evening that you didn't submit

22   to the Court.  So I need language.

23         MR. CAIRNS:  I've got some suggested

24   language, Your Honor.

25         THE COURT:  This would be the lesser

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  included charge.

2          MR. CAIRNS:  I'm sorry, this is the

3  language that I wrote out.  I believe Mr. Bowles and

4  I have agreed on that.

5          THE COURT:  Take a look at my language.  I

6  was doing that when I was waiting for your unanimity.

7          MR. CAIRNS:  We can't agree on that.  And

8  I'll withdraw that.

9          MR. BOWLES:  I like this instruction,

10 Judge.

11         THE COURT:  Are you okay with your lesser

12 included?

13         MR. BOWLES:  On the lesser included?

14         THE COURT:  Here is the language I put on

15 the special verdict forms.  Take a look at that.

16         MR. BOWLES:  That's what I was thinking,

17 too, in the same Count 1.

18         THE COURT:  See if that would work.

19         MR. BOWLES:  Yeah, I was thinking the same

20 on the Count 1.

21         MR. CAIRNS:  Yeah, that works for me.

22         MR. BOWLES:  Yeah, I like both of these.

23         THE COURT:  Are you okay on the lesser

24 included?

25         MR. BOWLES:  Yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. CAIRNS:  If we can't reach an
2    agreement, I might just withdraw that.  To be honest
3    with you, I'm concerned about the record on appeal.
4    I mean, we can't reach an agreement on that.
5          THE COURT:  Are you going to argue to the
6    jury there are two conspiracy --
7          MR. CAIRNS:  Well, I mean, I think there is
8    evidence of two.
9          THE COURT:  I think you solve it by picking
10   one and going with that, and then you don't have two
11   theories going to the jury.  Pick the one you like.
12         MR. CAIRNS:  I think I can do that.  I
13   think that's fair to Mr. Bowles.  I think that's
14   fair, so I'll pick one.
15         THE COURT:  So you withdraw the unanimity,
16   and we'll just pick one theory and go with that?
17         MR. BOWLES:  This looks good.  Thanks.
18         THE COURT:  All right.  Let's take a look
19   and see if we have anything else that we need to go
20   with.  Then instruction number 13 is the one for
21   Counts 2 and 3.  Instruction number 14 is the aiding
22   and abetting.  Did you like the way I did 15, "Except
23   where you're expressly charged otherwise herein in
24   the instruction," that probably should be an S,
25   "instructions on fix conspiracy and aiding and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  abetting"?

2          MR. BOWLES:  I do.  And it links back to

3  the instructions, so I think that makes sense.

4          MR. CAIRNS:  I'm sorry.  Where are we, Your

5  Honor?

6          THE COURT:  We're on 15.  I had to modify

7  that, since you're going to the jury on conspiracy

8  and aiding and abetting.  I can't tell them to just

9  ignore everybody else, because they're going to be

10  determining it.  So Ms. Whitten, will you on 15 put

11  "expressly charged here in the instructions on

12  conspiracy and aiding and abetting"?

13          MR. CAIRNS:  I'm sorry, I've got a bunch of

14  paperwork up here.

15          THE COURT:  So on your clean set of 15,

16  last two lines, "whether Mr. Leal has been proved

17  guilty of the crime charged," and this is what I

18  added, "except when you are expressly charged

19  otherwise herein in the instructions on conspiracy,

20  and aiding and abetting."

21          MR. CAIRNS:  Yes, Your Honor.  I have no

22  objection to that.

23          THE COURT:  All right.  Instruction 16 is

24  just punishment.  17 is -- I think that's pretty much

25  the Government's instruction.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      MR. CAIRNS:  Yes, Your Honor, that's what
2  we submitted.
3      THE COURT:  Can you think of any other
4  suggestions or comments or objections you need to
5  make, Mr. Cairns?
6      MR. CAIRNS:  No.  I just want to thank the
7  Court for its patience with me.  I'm sorry for the
8  requested modifications.
9      THE COURT:  All right.  But anything else?
10     MR. CAIRNS:  No, Your Honor.
11     THE COURT:  How about you, Mr. Bowles?
12     MR. BOWLES:  No, Your Honor.  I did want to
13 note for the record that I do agree with the Court's
14 instruction 13, and we are giving them a new verdict
15 form which includes Count 1 and includes the
16 alternatives.
17     THE COURT:  All right.  Any other
18 suggestions, comments, objections you to need make?
19     MR. BOWLES:  I do not, Your Honor.  I would
20 kind of withdraw my request to instruct them tonight.
21 But whatever the Court wants to do.  But I didn't
22 realize it's now 5:10.
23     THE COURT:  I think if nobody has any other
24 changes or comments or suggestions, I think it takes
25 me about 20 minutes to read a set like this, so I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    think we'll be in good shape.  Let's see if I can get

2    you a set and see what time it is.

3               MR. BOWLES:  Yes, sir.

4               THE COURT:  Probably what I'll do -- do you

5    want to go ahead and get the jury lined up?  I will

6    give you a set and put it over here, and then

7    Ms. Whitten will bring your sets.  In the beginning,

8    they'll all be the same.

9               (A discussion was held off the record.)

10              THE COURT:  Mr. Bowles, when the jury comes

11   in, the first thing I will do is ask you whether you

12   have any witness or evidence you want to put on and

13   you can say you rest.

14              All right.  On your sets, they're printing.

15   When Ms. Whitten gets a set, she'll bring it to you,

16   Mr. Cairns, Mr. Hurtado.  You'll get the first set, a

17   clean one.  There it is.  Mr. Bowles, she'll bring

18   you a set.

19              MR. BOWLES:  Thank you, Your Honor.

20              THE COURT:  But the first few are all the

21   same.

22              All right.  Anything we need to discuss

23   before we bring the jury in?  Mr. Hurtado,

24   Mr. Cairns?

25              MR. HURTADO:  No, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  How about you, Mr. Bowles?

2          MR. BOWLES:  No, Your Honor.

3          THE COURT:  All right.  All rise.

4          (The jury entered the courtroom.)

5          THE COURT:  All right.  Everyone be seated.

6          All right, Mr. Bowles, does Mr. Leal have

7    any witnesses or evidence he wishes to present?

8          MR. BOWLES:  Your Honor, we rest.

9          THE COURT:  All right.  Thank you,

10   Mr. Bowles.

11          All right, I'm going to instruct you

12   tonight, and then I'll let you go.  So we're not

13   going to be here late tonight, but I will instruct

14   you, and then we'll have closing arguments in the

15   morning, and then I'll have a few more instructions

16   before you begin your deliberations.

17          (The jury was instructed.)

18          THE COURT:  Let me see counsel up here at

19   the bench for a moment.

20          (The following proceedings were held at the

21   bench.)

22          THE COURT:  Any objections to the charge or

23   any additional charges other than what we have

24   already discussed, Mr. Cairns?

25          MR. CAIRNS:  No, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  How about you, Mr. Bowles?

 2            MR. BOWLES:  Your Honor, there is no

 3    objection.  I think at one point -- and it's not a

 4    big deal -- but on instruction 15, I think this Court

 5    said, in the middle, it says, "Knowledge of the

 6    underlying criminal act and intended to --"

 7            THE COURT:  What did I say?

 8            MR. BOWLES:  I think you said "or intended

 9    to help him."

10            THE COURT:  Which one is that?

11            MR. BOWLES:  That's instruction 15.

12            THE COURT:  15.

13            MR. BOWLES:  But it's not a big deal.

14            THE COURT:  What did I say instead of

15    "and"?

16            MR. BOWLES:  I believe you said "or."  I

17    was closely watching, but I don't think it's a big

18    deal.

19            THE COURT:  Why don't we put it just right

20    back up.

21            Ms. Bevel, can you put up 15 again, just

22    instruction 15?

23            (The following proceedings were held in

24    open court.)

25            THE COURT:  All right.  Ms. Bevel is going
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



1  to put number 15, and I just want to make sure I read

2  this correctly.  You see in the middle it says,

3  "First:  Someone else committed the charged crime,"

4  and it says "and."  Just to make sure that I doesn't

5  say "or" there instead of "and."  So you've got to

6  find both those elements.

7          All right.  Let me see counsel.

8          (The following proceedings were held at the

9  bench.)

10          THE COURT:  Any other objections to the

11  charge or any additional charges other than what

12  we've already discussed?

13          MR. CAIRNS:  No, Your Honor.

14          THE COURT:  How about you?

15          MR. BOWLES:  No, Your Honor.

16          THE COURT:  I propose this -- I didn't make

17  this the defendant.  I propose to make this

18  "Mr. Leal" on instruction number 18; is that all

19  right?

20          MR. CAIRNS:  Yes, Your Honor.

21          MR. BOWLES:  Yes.

22          THE COURT:  And I'd rather take that out,

23  "expert."  I don't think that's in the pattern

24  instructions.  So I'd rather "you've heard the

25  opinion testimony."

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



DEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1          MR. CAIRNS:  That's fine.

2          MR. BOWLES:  All right.

3          THE COURT:  So we'll make that one.

4          Oh, I just want to unbold that and put

5     "he."  Does that work for everybody?

6          MR. CAIRNS:  Yes.

7          MR. BOWLES:  Yes.

8          THE COURT:  Anything else?  I'll send them

9     home and let y'all do closings tomorrow.

10          (The following proceedings were held in

11     open court.)

12          THE COURT:  All right.  So we're going to

13     let you go for the evening.  Since this is our first

14     overnight break in the trial, I want to remind you of

15     a few things that are especially important.  Until

16     the trial is completed, you're not to discuss this

17     case with anyone, whether it's members of your

18     family, people involved in the trial, or anyone else.

19     And this includes your fellow jurors.  If y'all got

20     friendly during the day, don't start emailing each

21     other tonight.

22          If anyone approaches you and tries to

23     discuss the trial with you, please let me know about

24     it immediately.

25          Also, you must not read or listen to any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    news reports about the trial or get on the internet

2    and do any research for purposes of this case.  And

3    finally, remember that you must not talk about

4    anything with any person who is involved in the

5    trial, even if it doesn't have anything to do with

6    the trial.

7            If you need to speak with me, simply give a

8    note to one of the court security officers or Ms.

9    Bevel.

10           We're moving along.  You may hear these a

11   little bit tomorrow.  But if I don't remind you of

12   them, do keep them in mind when we take breaks

13   tomorrow.

14           I appreciate your hard work and all you've

15   done for us today.  You've been a good group to work

16   with and I appreciate you very much.  Be safe on your

17   travels, and we will see you at 8:30 in the morning.

18   I don't anticipate too much, but you might have to

19   wait a second while we're getting adjusted here.  But

20   try to be in the jury room at 8:30, and Ms. Bevel

21   will come in and check on you in the morning and

22   maybe have some goodies for you.  So if you do have

23   to wait, you've got a little bit to eat there.

24           So we'll see you in the jury room at 8:30.

25   Y'all have a good evening.  I appreciate your hard

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  work.  All rise.

2          (The jury left the courtroom.)

3          THE COURT:  All right.  Ms. Whitten will

4  run off copies, if you want them tonight before you

5  go so you'll have them to work in your closings.  If

6  not, they'll be here in the morning.  You can take a

7  look at them.  We'll make those three changes.

8          Is there anything else we need to discuss,

9  Mr. Hurtado?

10         MR. HURTADO:  No, Your Honor.

11         THE COURT:  How about you, Mr. Bowles?

12         MR. BOWLES:  No, Your Honor.  May we leave

13  this?

14         THE COURT:  You may.  I don't think anybody

15  is going to be in here.  Y'all have a good evening.

16  I appreciate your hard work.

17         (The Court stood in recess.)

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  UNITED STATES OF AMERICA

2  STATE OF NEW MEXICO

3

4              C-E-R-T-I-F-I-C-A-T-E

5      I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

6  Official Court Reporter for the State of New Mexico,

7  do hereby certify that the foregoing pages constitute

8  a true transcript of proceedings had before the said

9  Court, held in the District of New Mexico, in the

10 matter therein stated.

11      In testimony whereof, I have hereunto set my

12 hand on this 9th day of September, 2019.

13

14       _____

15       Jennifer Bean, FAPR, RMR-RDR-CCR, CRR
         Certified Realtime Reporter
16       United States Court Reporter
         NM Certified Court Reporter #94
17       333 Lomas, Northwest
         Albuquerque, New Mexico 87102
18       Phone: (505) 348-2283
         Fax: (505) 843-9492
19       License expires:  12/31/19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com