**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**GASPAR LEAL,**

        **Petitioner/Defendant,**

    **vs.**                             **Civ. No. 22-761  JB/JFR**
                                      **Cr. No. 16-3308  JB/JFR**

**UNITED STATES OF AMERICA,**

        **Respondent/Plaintiff.**

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]**
**REGARDING PETITIONER GASPAR LEAL's MOTION**
**TO VACATE, SET ASIDE OR CORRECT SENTENCE**
**PURSUANT TO 28 U.S.C. § 2255**

      **THIS MATTER** is before the Court on Gaspar Leal's (hereafter "Petitioner") *Motion*

*Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal*

*Custody*, filed on October 12, 2022.  CV Doc. 1.[2]  Petitioner claims his attorney provided

ineffective assistance by (1) failing to investigate and pursue mitigating evidence related to his

mental health issues; (2) failing to investigate defenses related to entrapment, public authority,

entrapment estoppel, and outrageous government conduct; (3) failing to object to Defendant's

sentence on grounds of Double Jeopardy; and (4) failing to object to an unconstitutional

indictment.  Petitioner argues that he was prejudiced by his ex-lawyer's "deficient performance,"

and that but for his ex-lawyer's "deficient performance" he would have received a lower

---

[1] On October 13, 2022, the Honorable James O. Browning entered an Order of Reference referring this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.  CV Doc. 4.

[2] Citations to documents in the underlying criminal case will be "CR Doc. ___," and to documents in the instant matter "CV Doc. ___."  The sentencing at issue here combined two underlying criminal proceedings – USDC NM CR No. 16-3069 and USDC NM CR No. 16-3308.  Sentencing related documents are filed in both cases; however, unless otherwise noted, the Court's citations to underlying criminal case documents will be to USDC NM CR No. 16-3308.

sentence.  The Court ordered a response by the United States, which was timely filed on

February 7, 2023.  CV Doc. 9.  Petitioner filed his opposition to the United States' Response on

March 23, 2023.  CV Doc. 12.

After reviewing the motion, response and reply, as well as the underlying files and

records of the case, I can hold an evidentiary hearing to "determine the issues and make findings

of fact …" if I have any question as to whether the prisoner is entitled to relief.  28 U.S.C. §

2255(b) ("Unless the motion and the files and records of the case conclusively show that the

prisoner is entitled to no relief …").  When reviewing the record in this case, including

Petitioner's motion and reply and the United States' response, as well as all the documents in the

underlying criminal case, I am mindful that I must liberally construe a *pro se* litigant's pleadings

and hold them to a less stringent standard than pleadings drafted by an attorney.  *Hall v. Bellman*,

935 F.2d 1106, 1110 (10th Cir. 1991).  I have done so here and have determined that no such

evidentiary hearing is warranted, as the Motion, files and records in this matter conclusively

show that Petitioner is not entitled to relief.  I am comfortable making the proposed findings and

recommended disposition without taking additional testimony or evidence.

As discussed below, I recommend that the Court deny Petitioner's Motion.  Furthermore,

I recommend that the Court deny a certificate of appealability and enter judgment accordingly.

## BACKGROUND AND PROCEDURAL HISTORY

Beginning in April 2016, the Bureau of Alcohol, Tobacco, Firearms and Explosives

("ATF") began investigating Petitioner after an ATF agent received a business card bearing

Petitioner's company and individual names and learned thereafter that Petitioner had a criminal

record and was currently on parole for state court related convictions.  CR Doc. 199 at 2 (citing

Presentence Investigation Report ("PSR") ¶ 9, at 6).  The ATF agent provided Petitioner's

business card and background information to a Confidential Informant ("CI"), who subsequently made contact with Petitioner.  *Id.* (citing PSR ¶ 10, at 6).  Over the next three months, the CI engaged in various communications with Petitioner to purchase narcotics and did so on three separate occasions.  *Id.* at 3 (citing PSR ¶¶ 11-21, at 6-8).  These drug transactions involved the sale of (i) 3.2 grams of methamphetamine of 100.0% purity on May 10, 2016, to the Confidential Informant; (ii) 0.2565 grams of methamphetamine of 100.0% purity on May 12, 2016, to the Confidential Informant; (iii) 51.83 grams of methamphetamine of 100.0% purity on June 8, 2016, while in custody at Bernalillo County Jail;[3] and (iv) 27.1 grams of methamphetamine, of 100.0% purity, while also in Bernalillo County custody.  *Id.* (citing PSR ¶ 22, at 7-8).  On July 12, 2016, an Indictment was filed charging Petitioner (and others) with Count 1: Conspiracy to Distribute 50 Grams and More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine; and Count 2: Distribution of 50 Grams and More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine.  CR Doc. 1 (USDC NM CR No. 16-3069).  An Arrest Warrant was issued and Petitioner was placed in custody at the Central New Mexico Correctional Facility in Los Lunas, New Mexico.  CR Doc. 3 (USDC NM CR No. 16-3069); CR Doc. 199 at 7.

While in custody pursuant to the July 12, 2016, Indictment, Petitioner continued communicating with the CI in July and August 2016 and facilitated two additional drug purchase transactions.  CR Doc. 199 at 7-10 (citing PSR ¶¶ 26-34, at 8-10).  These drug transactions involved the sale of 57.5 net grams of methamphetamine, on July 24, 2016, and the sale of 55.9 net grams of methamphetamine on August 3, 2016.  *Id.* at 10 (citing PSR ¶ 35, at 10).  On December 20, 2017, a Superseding Indictment was filed charging Petitioner with Count 1:

---

[3] On June 6, 2016, Petitioner was taken into custody and placed at the Bernalillo County Jail for unrelated conduct. CR Doc. 180 at 7, ¶ 15.

Conspiracy to Distribute 50 Grams and More of Methamphetamine, in violation of 21 U.S.C.

§ 846, 21 U.S.C. § 841(b)(1)(A); and Counts 2 & 3: Distribution of 50 Grams and More of

Methamphetamine and Aiding and Abetting, in violation of 21 U.S.C. §§ 841(a)(1) and

(b)(1)(B).  *Id.* at 10.

Petitioner had two separate jury trials based on the foregoing indictments.  On

December 6, 2017, a jury found Petitioner guilty of Conspiracy to Distribute 50 Grams and More

of a Mixture Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C.

§ 846, 21 U.S.C. § 841(b)(1)(B) based on the July 12, 2016, Indictment.  CR Docs. 190 at 1, 201

(USDC NM CR No. 16-3069).  On July 23, 2019, a jury found Petitioner guilty of Conspiracy to

Distribute 50 Grams and More of Methamphetamine, in violation of 21 U.S.C. § 846, 21 U.S.C.

§ 841(b)(1)(A) based on the December 20, 2017, Superseding Indictment.  CR Docs. 175, 190 at

2.

On October 1, 2019, the United States Probation Office issued a PSR, and Petitioner and

the United States submitted sentencing memoranda for the Court's consideration on February 4,

2020, and February 5, 2020, respectively.  CR Docs. 180, 222, 223.  In Petitioner's sentencing

memorandum, Petitioner's counsel requested the Court vary substantially from the sentencing

guidelines, which recommended a sentence of 360 months to life, based on, *inter alia*,

Petitioner's diminished capacity.  CR Doc. 199 at 21-22.  The United States argued Petitioner's

offenses merited a sentence of 480 months.  *Id.* at 25-26.  On February 13, 2020, District Judge

James O. Browning held a sentencing hearing on the two offense conducts.  CR Docs. 192, 209.

In oral argument, Petitioner's counsel again requested  a substantial downward variance from the

recommended Guideline sentence of 360 months imprisonment to life imprisonment based on

Petitioner's diminished capacity.  CR Docs. 199 at 28-30; 200 at 9-13.  On January 25, 2021,

Judge Browning entered a Memorandum Opinion and Order in which he declined to vary downward from the Sentencing Guidelines and concluded that the punishment set forth in the Guidelines was appropriate for Petitioner's offenses.  CR Doc. 199 at 55-60.  Having considered forty-three factors placing both downward and upward pressure on Petitioner's sentence, Judge Browning concluded that a "360-month sentence, at the low end of the Guideline range, was sufficient, but not greater than necessary, to comply with the four purposes that 18 U.S.C. § 3553(a)(2) enumerates."  *Id.*

Petitioner appealed his convictions on January 26, 2021, to the Tenth Circuit Court of Appeals.  CR Doc. 201.  On direct appeal Petitioner argued that (1) there was insufficient evidence to support his conviction for drug conspiracy; (2) the government acted outrageously when investigating him; and (3) the 30-year sentence imposed by the district court was unreasonable because it far exceeded the sentence for more culpable codefendants and failed to account for Petitioner's mental illness.  *See United States v. Leal*, 32 F.4th 888 (10th Cir. 2022).  On April 25, 2022, the Tenth Circuit rejected Petitioner's arguments and affirmed his sentence. *Id.*

On October 12, 2022, Petitioner filed his *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* currently before the Court.

### **STANDARD OF REVIEW**

Section 2255 entitles a prisoner to relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  28 U.S.C. § 2255(b).  The standard applied to § 2255 motions is stringent and not every violation of

federal law can be remedied under § 2255.  *United States v. Gordon*, 172 F.3d 753, 755 (10th Cir. 1999).  "Only if the violation constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure'" can § 2255 provide relief.  *Id., citing United States v. Talk,* 158 F.3d 1064, 1069 (10th Cir. 1998).  The Court presumes the proceedings which led to a defendant's conviction were correct.  *Parke v. Raley*, 506 U.S. 20, 29–30 (1992).

The Sixth Amendment of the U.S. Constitution guarantees the right to effective assistance of counsel at trial.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  For Petitioner to succeed on his claims of ineffective assistance under § 2255, he must demonstrate both that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense."  *Id.* at 687-88.  For counsel's performance to fall outside the bounds of professional reasonableness, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  To show prejudice, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  A court "may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one."  *Cooks v. Ward*, 165 F.3d 1283, 1292–93 (10th Cir. 1998).

To meet this burden, a petitioner's "allegations must be specific and particularized, not general or conclusory."  *Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995); *see United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (conclusory allegations are insufficient to support an ineffective assistance of counsel claim.).  "[S]heer speculation" that counsel might

6

have done something different that might have resulted in Petitioner receiving a shorter sentence "does not rise to the level of a constitutional claim." Then, even if Petitioner can make that showing, he still must show there is a reasonable probability that, but for his counsel's unprofessional errors, his sentence would have been different. *See Strickland*, 466 U.S. at 694. To be considered *ineffective* assistance of counsel, "the representation must have been such as to make the [proceeding] a mockery, sham, or farce, or resulted in the deprivation of constitutional rights." *Lorraine v. United States*, 444 F.2d 1, 2 (10th Cir. 1971). The Court must give considerable deference to an attorney's strategic decisions and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690; *United States v. Barrera-Muñoz*, No. 11-CR-1065, 2013 WL 12142581, at *3 (D.N.M. July 3, 2013*), report and recommendation adopted,* No. 11-CR-1065, 2013 WL 12140980 (D.N.M. Oct. 8, 2013).

As explained below, I conclude Petitioner's claims fail because counsel's representation was not objectively unreasonable, nor did Petitioner suffer prejudice as a result of that representation.

## ANALYSIS

### A.    Mental Health

Petitioner first claims that his counsel was ineffective by failing to investigate and pursue mitigating evidencing related to Petitioner's mental health issues. Doc. 1 at 4. Petitioner alleges that his counsel failed to investigate and/or present evidence of his mental health history by presenting school records, doctor records/documents and medications, and any other sources that may have been found if adequately investigated. *Id.* Petitioner further alleges that his counsel

failed to investigate and pursue the possibility of establishing that Petitioner was mentally unstable. *Id.*

Respondent contends that the Tenth Circuit concluded on direct appeal that the district court did not fail to consider Petitioner's mental conditions when it sentenced him to 360 months of imprisonment. CV Doc. 9 at 7. Respondent contends that in sentencing Petitioner, the district court acknowledged that Petitioner was illiterate, had suffered from abuse and trauma, had borderline functioning, and had suffered intellectual deficiencies and psychosis – all of which put downward pressure on his sentence. *Id.* Respondent further contends that Petitioner has not identified any flaws in the district court's analysis of his mental conditions thereby waiving Petitioner's argument. *Id.*

The Court finds that the underlying record runs contrary to Petitioner's argument that his counsel failed to investigate and/or present evidence regarding his mental health or that Petitioner was prejudiced due to any alleged failure. For example, on February 3, 2017, Petitioner's counsel moved for a competency determination before proceeding to trial, which was granted. CR Docs. 50, 54. To that end, the U.S. Department of Justice conducted a Forensic Evaluation of Petitioner at the Federal Detention Center in Miami, Florida, from February to May 2017 "to evaluate the defendant's competency to proceed and mental state at the time of the alleged offense." CR Doc. 180-2 at 2. The forensic evaluation included clinical interviews[4] and mental status exams, and the administration of several psychological tests to assess Petitioner's functioning. *Id.* at 2-8. The evaluators concluded, *inter alia,* that Petitioner did not suffer from a severe mental disorder or defect that would preclude his ability to

---

[4] Petitioner was asked and provided information regarding his developmental, educational, employment, military, social/marital, medical, psychiatric, substance abuse, and criminal histories. CR Doc. 180-2 at 3-5.

understand the nature and consequences of the proceedings against him, or to assist his attorney in his own defense. *Id.* at 1, 8-11. The evaluators further concluded that Petitioner did not suffer from a mental illness that interfered with his ability to appreciate the nature and quality of wrongfulness of his actions. *Id.*

Following Petitioner's trials and convictions, Petitioner's counsel moved on October 18, 2019, to continue Petitioner's sentencing hearing with an intention of requesting authorization for a second psychiatric evaluation for sentencing purposes. CR Doc. 183. Petitioner's counsel did so on October 23, 2019, and the district court granted Petitioner's motion to hire a psychologist. CR Docs. 184, 185. On November 11, 2019, Alexander J. Paret & Associates conducted a Forensic Neuropsychological Evaluation of Petitioner at Cibola County Correctional Center "to evaluate [Petitioner's] cognitive, emotional and Executive Functionality in order to present evidence-based forensic information to the Court on how his psychological disorders may have significantly diminished or reduced his mental capacity at the time of the current charges, and if so, did his reduced mental capacity contribute substantially to the commission of the instant offenses." CR Doc. 190-1 at 2. The evaluation included a structured clinical interview and mental status examination, and the administration of several psychological tests. *Id.* at 4-42. Dr. Paret concluded, *inter alia*, that Petitioner did not have the cognitive abilities or emotional psychological stability to have formed specific intent to commit the crimes for which he was accused and that Petitioner acted on significantly diminished capacity. *Id.* at 36-41. Petitioner's counsel relied on Dr. Paret's findings to argue for a downward variance from the applicable sentencing guidelines in Petitioner's case. CR Doc. 199 at 21-24.

Additionally, District Judge Browning's Memorandum Opinion and Order details his consideration of Petitioner's counsel's request for a downward variance from the applicable

sentencing guidelines based on Petitioner's mental health problems as identified and discussed in

Dr. Paret's report.  CR Doc. 199 at 55-59.  For instance, Judge Browning considered Dr. Paret's

diagnostic impressions that Petitioner suffers from schizophrenia, depression, post-traumatic

stress disorder and generalized anxiety disorder.  CR Doc. 199 at 58-59.  Judge Browning also

considered that Petitioner has visual and audio hallucinations; that he has been diagnosed with

bipolar disorder; and that he has an intellectual disability.  *Id.*

Finally, as previously noted, on direct appeal on this issue, the Tenth Circuit rejected

Petitioner's argument that the district court failed to consider his mental conditions at sentencing.

*Leal*, 32 F.4th at 901 (finding that the court acted reasonably when considering Petitioner's

mental conditions when it concluded that they did not justify a variance below the guideline

range).  Thus, the Tenth Circuit considered and resolved this issue.  *See Hale v. Fox*, 829 F.3d

1162, 1171 (10th Cir. 2016) (citing *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007))

("A § 2255 motion is neither a recapitulation of nor a substitute for a direct appeal.  Issues that

were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed

circumstances.").

Based on the foregoing, Petitioner's argument that but for his lawyer's "deficient

performance" he would have received a lower sentence necessarily fails because his lawyer did

in fact pursue and present mitigating evidence related to Petitioner's mental health both before

trial and prior to sentencing.  And although Petitioner suggests that additional historical mental

health information *may* exist, *i.e.,* school and childhood provider/medication records, Petitioner

fails to specifically identify any such information or describe how it would qualify him for a

downward departure.[5]  In sum, the Court finds that Petitioner has failed to plead facts to show

---

[5] Petitioner provided information about his psychiatric/mental health history when questioned during both forensic evaluations, which was noted to be vague and inconsistent.  CR Doc. 180-2 at 4-5; Doc.190-1 at 8.

that his counsel's performance fell below an objective standard of reasonableness or to demonstrate a reasonable probability that but for his counsel's failure to investigate and present evidence of Petitioner's mental health the result of the proceedings would have been different. Accordingly, the Court finds Petitioner's argument is without merit and offers no basis for an ineffective assistance of counsel claim.

### B.  __Affirmative Defenses__

Petitioner next argues that his counsel was ineffective for failing to investigate and present affirmative defenses related to entrapment, public authority, entrapment by estoppel, and outrageous government conduct, and that had his counsel done so he would have received a sentence below the applicable Guideline range.  CV Doc. 1 at 5.  Petitioner argues the foregoing defenses are applicable in his case because the CI unconscionably targeted him due to his heroin addiction, recent release from custody, and severely diminished cognitive abilities.  *Id.*

Respondent contends that Petitioner's claim should be dismissed because the Tenth Circuit already concluded that Petitioner had not established either of the necessary elements to show outrageous government conduct, *i.e.,* excessive governmental involvement or significant governmental coercion.  CV Doc. 9 at 8-10.  Respondent further contends that Petitioner failed to raise claims regarding entrapment, public authority, or entrapment by estoppel on direct appeal such that they are waived here.  *Id.* at 10-13.  That said, Respondent contends that Petitioner has not and cannot establish that the defenses of entrapment, public authority and entrapment by estoppel are applicable to the facts of this case.  *Id.*

The Court finds that Petitioner has failed to plead facts to show his counsel's performance fell below an objective standard of reasonableness or to demonstrate a reasonable probability that but for his counsel's failure to investigate and present affirmative defenses of

11

outrageous governmental conduct, entrapment, public authority and entrapment by estoppel the result of the proceedings would have been different.  To begin, the Tenth Circuit has already adjudicated Petitioner's claim on direct appeal that the government acted outrageously by using a CI to target Petitioner who was a recently released addict with severe cognitive difficulties. *Leal,* 32 F.4th at 895-97 (finding that the government's conduct in the investigation as not obviously outrageous).  Thus, Petitioner's argument that his counsel's failure to raise this defense at sentencing amounts to ineffective assistance of counsel is without merit.

Similarly, Petitioner's argument that his counsel was ineffective for failing to assert other affirmative defenses is without merit because they do not apply to the facts of his case.  Under an entrapment defense, a defendant (1) must be induced to commit the offense by government agents, and (2) must not have been otherwise predisposed to do so when presented with the opportunity.  *United States v. Duran*, 133 F.3d 1324, 1330 (10th  Cir. 1998).  The defendant's lack of such predisposition is the crux of the entrapment defense. *Hampton v. United States,* 425 U.S. 484, 488–89, 96 S.Ct. 1646, 1649–50, 48 L.Ed.2d 113 (1976); *United States v. Russell,* 411 U.S. at 429, 93 S.Ct. at 1641.

As to the first element,  Respondent concedes that the CI "arguably put a deal on the table by asking about the possibility of buying drugs."  CV Doc. 9 at 11.  As to the second element, however, Petitioner does not argue, nor does the underlying record support, that Petitioner was not predisposed to commit the offense when presented with the opportunity.  Instead, Petitioner premises his argument for an entrapment defense on the government's outrageous conduct, *i.e.,* "that the government's highly skilled paid informant unconscionably targeted him due to his heroin addiction, recent release from custody, and severely diminished cognitive abilities."  CV Doc. 12 at 3.  As previously stated, Petitioner's argument regarding the government's alleged

outrageous conduct was raised and adjudicated by the Tenth Circuit on direct appeal and is, therefore, insufficient grounds to support an entrapment defense.

Moreover, the underlying record clearly demonstrates Petitioner's predisposition to commit criminal activity. The PSR, to which Petitioner did not object, documents Petitioner's 30-year criminal history including state-level drug and violence-related offenses including possession of controlled substances. CR Doc. 180 at 12-21. Further, in determining Petitioner's sentence, Judge Browning concluded that Petitioner's criminal history category of VI[6] was "justified. In other words, he is a career offender . . . . Some of this is extreme criminal behavior." CR Doc. 199 at 59. "[Petitioner] could have said no. He didn't." *Id.*; CR Doc. 209 at 11. *See United States v. Robinson*, 993 F.3d 839, 847 (10th Cir. 2021), *cert. denied*, 211 L.Ed.2d 108, 142 S.Ct. 243 (2021) (explaining that when the government does not induce the conduct, there can be no entrapment). Petitioner's entrapment argument, therefore, is without merit and does not support an ineffective assistance of counsel claim. *See Martin v. Kaiser*, 907 F.2d 931, 936 (10th Cir. 1990) (citing *Strickland*, 466 U.S. at 69) (explaining it is not ineffective assistance of counsel to fail to make meritless arguments); *see also Chandler v. Moore,* 240 F.3d 907, 917-18 (11th Cir.2001) (*citing United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir.2000)) (counsel not ineffective for failing to raise frivolous claims or investigate non-meritorious claims and defenses).

Likewise, Petitioner's public authority and entrapment by estoppel arguments are without merit and do not support an ineffective assistance of counsel claim. *See id.* "The public

---

[6] The PSR explained that Petitioner's criminal convictions resulted in a subtotal criminal history score of 24 and that two points were added because Petitioner has committed the instant offence while under a criminal justice sentence. CR Doc. 180 at 21. "According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of 26 establishes a criminal history category of VI." *Id.*

authority defense requires a defendant to show that he was engaged by a government official to participate in a covert activity." *United States v. Apperson,* 441 F.3d 1162, 1204 (10th Cir. 2006) (internal quotation marks omitted).  "The defense of entrapment by estoppel is implicated where an agent of the government affirmatively misleads a party as to the state of the law and that party proceeds to act on the misrepresentation so that criminal prosecution of the actor implicates due process concerns under the Fifth and Fourteenth amendments." *United States v. Hardridge,* 379 F.3d 1188, 1192 (10th Cir. 2004) (quoting *United States v. Nichols,* 21 F.3d 1016, 1018 (10th Cir. 1994)).  Thus, there must be an active misleading by a government agent, and actual reliance by the defendant which is reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation.  *Id.*  Further, "the government agent must be one who is 'responsible for interpreting, administering, or enforcing the law defining the offense.' " *Id.* (quoting *United States v. Gutierrez–Gonzalez,* 184 F.3d 1160, 1167 (10th Cir.1999)).  Here, Petitioner does not argue, nor does the record support, that Petitioner was or believed he was acting as an authorized agent at the time of the events surrounding the charges contained in indictments, or that Petitioner was misled by or relied on a government agent's misrepresentations regarding the legality or illegality of the drug transactions at issue here.  As such, these affirmative defenses are not applicable to the facts of this case.

In sum, the Court finds that Petitioner has failed to plead facts to show his counsel's performance fell below an objective standard of reasonableness or to demonstrate a reasonable probability that but for his counsel's failure to investigate and present affirmative defenses of outrageous government conduct, entrapment, public authority, and entrapment by estoppel the result of the proceedings would have been different.  Here, there was nothing Petitioner's

14

counsel could have or should have investigated as to these affirmative defenses given the facts of this case. *Martin,* 907 F.2d at 936; *Chandler*, 240 F.3d at 917-18.

**C.      Double Jeopardy**

Petitioner next argues that his counsel was ineffective because he failed to object to his sentence under the Double Jeopardy Clause. CV Doc. 1 at 7. Petitioner argues here, as he did in the underlying proceedings, that Count I of the December 20, 2017, Superseding Indictment constituted a second prosecution of conspiracy charges found in the July 12, 2016, Indictment. CV Doc. 12 at 4-5. Petitioner argues that his counsel failed to challenge that the district court was punishing him twice for the same offense and resulted in an unreasonable sentence. *Id.*

Respondent contends that because the Tenth Circuit has already decided this issue the Court should deny Petitioner's Motion. CV Doc. 9 at 13. Respondent explains that in the underlying proceedings Petitioner moved to dismiss Count I of the December 20, 2017, Superseding Indictment for violation of the double jeopardy clause. *Id.* Petitioner argued in his motion that the drug conspiracy charged in that case was the same drug conspiracy for which he was convicted based on the July 12, 2016, Indictment, and that continued prosecution violated his double jeopardy rights. *Id.* On May 29, 2018, the district court entered a Memorandum Opinion and Order concluding that the two conspiracy charges reflected in the two indictments were not interdependent and that the December 20, 2017, Superseding Indictment charged separate offenses such that double jeopardy did not apply. *Id.* On June 3, 2018, Petitioner appealed the district court's decision, and on April 22, 2019, the Tenth Circuit affirmed the district court's decision and rejected Petitioner's double jeopardy argument. *See United States v. Leal*, 921 F.3d 951 (10th Cir. 2019).

Here, on interlocutory appeal, the Tenth Circuit considered and rejected Petitioner's double jeopardy violation argument in the underlying proceedings. *Id.* The Court, therefore, finds that Petitioner has failed to plead facts to show his counsel's performance fell below an objective standard of reasonableness or to demonstrate a reasonable probability that but for his counsel's failure to object to Petitioner's sentencing based on double jeopardy grounds the result of the proceedings would have been different.

### D.   Unconstitutional Indictment

Last, Petitioner argues that his counsel was ineffective because he failed to object to "unconstitutional charges" in the indictment. Doc. 1 at 8. In support, Petitioner appears to argue that the conspiracy charges were unconstitutional because there was insufficient evidence to convict him of conspiracy to distribute more than 50 grams of methamphetamine, as opposed to marijuana, and he was, therefore not placed on notice to mount a sufficient defense. CV Doc. 1 at 8. In his Reply on this issue, Petitioner asserts for the first time that "[a]ctual [p]rejudice exists as absent his ex-lawyer's 'deficient performance' [he] would not have went to trial, however, insisted on going to take a plea agreement[.]" CV Doc. 12 at 6.

Respondent contends that the indictments at issue here clearly reflect the charges brought against Petitioner such that his claim of no notice of the charges against him lacks merit. CV Doc. 9 at 14. Respondent further contends that Petitioner failed to raise this claim on direct appeal and he is therefore foreclosed from raising it now. *Id.* As for Petitioner's claims regarding the sufficiency of the evidence as to the conspiracy to distribute at least 50 grams of methamphetamine charge, Respondent contends that the Tenth Circuit addressed Petitioner's claim based on the sufficiency of the evidence on direct appeal and rejected Petitioner's contentions. *Id.* at 15-18 (citing *Leal*, 32 F.4th at 891).

The Court finds Petitioner's argument as to the lack of notice regarding the conspiracy charges against him is unsupported.  The July 12, 2016, Indictment in Case No. CR 16-3069 charged Petitioner, and others, with "Count I: Conspiracy to Distribute 50 Grams and More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine."  CR Doc. 199 at 11.  The December 20, 2017, Superseding Indictment in Case No. CR 16-3308 charged Petitioner with "Count I: Conspiracy to Distribute 50 Grams and More of Methamphetamine," in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(b)(1)(A)."  *Id.* at 12.  Petitioner's allegation, without more, is conclusory and insufficient to support an ineffective assistance of counsel claim.

Further, on direct appeal, Petitioner challenged whether sufficient evidence existed to convict him of conspiracy to distribute at least 50 grams of methamphetamine.  *Leal*, 32 F.4th at 891-95.  The Tenth Circuit considered and rejected Petitioner's contentions and found that (1) the evidence and reasonable inferences showed Petitioner's knowledge that the sale would involve at least 50 grams of methamphetamine; (2) that the jury could reasonably find participation in the conspiracy based on Petitioner's phone calls; (3) that sufficient evidence existed to prove Petitioner's knowledge that the sale would involve methamphetamine; and (4) that sufficient evidence existed for the jury to find that Petitioner had known the sale would involve at least 50 grams.  *Id.*  As such, Petitioner's argument that his counsel was ineffective for failing to object to the conspiracy charges as "unconstitutional" based on insufficient evidence is without merit.  *See Hale* 829 F.3d at 1171 ("A § 2255 motion is neither a recapitulation of nor a substitute for a direct appeal.  Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances.").

Finally, Petitioner, in the context of his allegations regarding the "unconstitutional charges," asserts for the first time in his Reply that he has suffered actual prejudice and that but for alleged counsel's failure to object to the unconstitutional charges, he would have insisted on a plea agreement and not gone to trial.  Generally, issues raised by an appellant for the first time on appeal in a reply brief are deemed waived.  *United States v. Patterson*, 525 F. App'x 681, 683 (10th Cir. 2013).  That said, even if the Court were to consider Petitioner's argument, the Court may readily dispose of Petitioner's claim because Petitioner has not demonstrated under *Strickland* that his counsel's performance fell below an objective standard of reasonableness or that Petitioner suffered any prejudice.

The *Strickland* two-part test applies to ineffective assistance claims arising out of representation during the pre-trial plea process as well as to other ineffective assistance claims. *Missouri v. Frye*, 566 U.S. 134, 140 (2012).  As to the first part, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  *Id.* at 144.  As to the second prejudice part, Petitioner must demonstrate a reasonable probability he would have accepted a plea offer but for his counsel's actions.  *Baertschy v. Raemisch*, 764 F. App'x 732, 736 (10th Cir. 2019) (citing *Frye*, 566 U.S. at 147 and *Strickland*, 466 U.S. at 694).  The Court "may address the performance and prejudice components in any order, but need not address both if [Petitioner] fails to make a sufficient showing of one."  *Cooks v. Ward*, 165 F.3d at 1283, 1292-93 (10th Cir. 1998).

To begin, Petitioner does not allege that his counsel failed to communicate any formal plea offers from the prosecution nor does he allege that his counsel misinformed him or provided inadequate advice regarding the terms of pleas offered or their bearing on his proceeding to trial.

*Frye*, 566 U.S. at 145.  To the contrary, the record demonstrates Petitioner's counsel filed

seventeen motions to continue trial in which he argued, *inter alia*, that a negotiated resolution

remained possible.  CR Docs. 21, 35, 51, 55, 61, 74, 77, 82, 96, 107, 111, 117, 120, 126, 129,

137, 151.  To that end, in Petitioner's final Motion to Continue Trial Setting, filed on July 15,

2019, counsel represented to the Court that

> [t]he Government has proposed a plea and counsel is meeting with Mr. Leal this
> week.  If that meeting results in a decision to resolve this matter, then all sides are
> saved a tremendous amount of time and resources.  If the meeting is not successful,
> there is no prejudice to the defendant or government by granting one final
> continuance.  Mr. Leal is already facing a very significant sentence from his
> conviction in the first indictment against him.
>
> Due to Mr. Leal's learning disabilities, it is difficult to speak with Mr. Leal and to
> explain what the proposed plea offer entails, which is why this process has taken
> some time. . . .
>
> Undersigned has a scheduled meeting with Mr. Leal on Tuesday, July 16, 2019, at
> Cibola County Detention Center.

CR Doc. 151 at 3.  Petitioner has not argued nor presented any evidence to suggest that this

meeting did not occur or that his counsel did not properly present and discuss the terms of the

Government's proposed plea with him.  Notably, the Court held a pretrial conference the

afternoon of July 16, 2019, at which Petitioner was noted to be "present in custody," and during

which the Court indicated the case would be proceeding to trial.  CR Doc. 156 at 1.  As such,

absent evidence to the contrary, it is reasonable to conclude that counsel's meeting with

Petitioner was not successful and that Petitioner rejected the Government's proposed plea and

wished to proceed to trial.  On July 23, 2019, Petitioner entered a Notice to Withdraw Motion to

Continue Trial Setting stating that the "motion is now moot" given that trial began on July 22,

2019.  CR Docs. 169, 177.

Last, Petitioner has not alleged that even if adequate assistance had been given, *i.e.,* that his counsel had objected to the "unconstitutional charges," that Petitioner would have elected to *plead guilty* and not proceed to trial.  Instead, Petitioner alleges only that he would have "insisted on going to take a plea agreement."  This is not enough to show prejudice.  *See Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995) (finding insufficient evidence of prejudice, in part because defendant "made no direct assertion that he would have pled guilty if [his] counsel had provided him with additional information concerning the risks of trial"); *see also generally Hill v. Lockhart*, 474 U.S. 52, 60 (1985) (finding no prejudice where defendant had not alleged that with adequate advice and assistance he would have elected to plead not guilty and proceed to trial).  Further, it was only at the sentencing hearing that Petitioner, for the first time, accepted any responsibility for his actions.  CR Docs. 199 at 59; 209 at 13, 16.  Thus, the Court is not persuaded that Petitioner's self-serving statement demonstrates a reasonable probability that he would have insisted on a plea deal and pled guilty to the very charges he alleges his counsel should have objected to as unconstitutional and to which Petitioner continues to allege are unconstitutional even now.  *See United States v. Morris*, No. 03-3360, 106 F. App'x 656, 659, 2004 WL 1598792 (10th Cir. July 19, 2004) (unpublished) (movant's "subjective and self-serving statements are insufficient to show a reasonable probability that, but for alleged counsel's errors, he would have pled guilty"); *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (self-serving statements unsupported by evidence do not establish a basis for relief under § 2255).

In sum, the Court finds Petitioner has failed to provide evidence that his counsel's performance fell below an objective standard of reasonableness or to demonstrate a reasonable

probability that he would have insisted on a plea deal and not proceeded to trial but for his counsel's failure to object to alleged "unconstitutional charges."

## CONCLUSION

For all of the foregoing reasons and on the record before me, I am unable to find that counsel's performance fell below an objective standard of reasonableness or that Petitioner suffered prejudice as a result of his lawyer's performance.

## RECOMMENDATION

The record in this case conclusively shows that an evidentiary hearing is not necessary. After carefully considering each of the claims presented, I conclude that Petitioner is not entitled to relief under 28 U.S.C. § 2255.  Petitioner's counsel's performance did not fall below an objective standard of reasonableness, and Petitioner cannot meet the standard set forth in *Strickland v. Washington*, 422 U.S. 668, 687 (1984).  Therefore, I recommend denial of Petitioner's *Motion Under Habeas Corpus [Under] 28 U.S.C. § 2255* and dismissal with prejudice, as well as a denial of a certificate of appealability.

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**